No. 48,784

Choo-E-Flakes, Inc., *Appellee,* v. Ernest G. Good, *Appellant.*

(580 P.2d 888)

Opinion filed July 15, 1978.

*T. Richard Liebert,* of Liebert & Liebert, of Coffeyville, argued the cause and was on the brief for the appellant.

*Charles F. Forsyth,* of Fleming and Forsyth, of Erie, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Owsley, J.: This is an appeal from a jury verdict in favor of plaintiff Choo-E-Flakes, Inc., against defendant Ernest G. Good for recovery of money past due on an open account for cattle feed purchased by defendant.

Plaintiff ran a milling operation in Parsons, Kansas. One of the services it offered to customers was to "flake" grain for cattle feed. This involved heating grain under controlled conditions of pressure and humidity, rolling the grain, and drying it. The process made grain more palatable to animals and they presumably received more food value from the mix.

Defendant became interested in the process and contacted plaintiff in March, 1974. With assistance from plaintiff, defendant prepared a feed formula for his cattle. Plaintiff agreed to mix the formula, using grain, protein supplements and other additives supplied by defendant. Plaintiff would charge for flaking, mixing and delivering the feed. If defendant did not have grain he could buy grain from sources of his own or buy it from plaintiff at market price and have the cost added to his bill. It appears the prevalent practice was to buy grain through plaintiff.

The undisputed evidence shows defendant determined which ingredients were to go into the mixed feed. He could and did change the formula from time to time. On occasion he would change or eliminate the protein supplement in the mix. Plaintiff considered the mix defendant's "special feed" because defendant designed and controlled the ingredients. For this reason plaintiff never guaranteed the nutritional content of the mix.

The present controversy arose when plaintiff's operation changed managers. Defendant fell behind in paying his account and was put on a cash basis. A dispute also arose over the quality of grain plaintiff was putting in the mix. After plaintiff filed suit defendant answered denying liability and counterclaimed to recover all sums he had previously paid. To support those positions defendant relied on the Kansas Commercial Feeding Stuffs Act, K.S.A. 2-1001, *et seq.* The application of the act to the facts of this case forms the heart of the appeal.

At trial defendant contended he was entitled to judgment on the petition and counterclaim because plaintiff had violated section 2-1002 (E) of the act by failing to include a delivery ticket with each load delivered to defendant and all the transactions were void. The trial court disagreed and refused to instruct the jury that the act applied, and struck defendant's counterclaim. The jury returned a verdict for plaintiff but reduced the amount shown to be due, apparently agreeing with defendant that two or three loads of feed contained bad grain. On appeal defendant contends the trial court erred in ruling the act did not apply and in excluding proffered testimony of an expert.

K.S.A. 2-1001, *et seq.,* regulates the sale of commercial feeding stuffs. The producer of a commercial mix is required to label every lot, package, bag or parcel of feeding stuffs sold, offered or exposed for sale, or distributed within the state. The label must indicate the producer of the feed, its net weight, and other information indicating the nutritional and chemical content of the feed. Customer formula feed requires a similar label or delivery ticket to accompany each order mixed. Exempt from the act are custom mixed feeds.

Plaintiff argues the feed involved herein was custom mixed feed not subject to the act and defendant argues the feed was customer formula feed subject to the act.

Custom mixed feed is defined in K.S.A. 2-1001 (D):

"The term 'custom mixed feed' means a mixture of feed ingredients, or a mixture of feed ingredients and other materials, which are supplied to the owner of the mixing equipment, and are mixed for the owner of the ingredients without any guarantee on the part of the owner of the mixing equipment as to the nutritional or chemical content of the resulting mixture."

K.S.A. 2-1001 (C) defines custom formula feed:

"The term 'custom formula feed' means a mixture of feeding stuffs, or a mixture

of feeding stuffs and other materials, each lot of which is formulated subsequent to the request of an individual purchaser to contain a specific content of ingredients, protein, vitamin, drug or other guarantee."

Clearly, the purpose of the act is to protect the public from commercially prepared feeds which are adulterated, unwholesome, unfit, or have no food value. Thus, a product prepared by a commercial feeder must contain a guarantee of its nutritional and chemical value in the form of a label or delivery ticket.

It is apparent the legislature did not intend the act to apply to feeds where the mixer does not control formulation of the feed or represent or guarantee the nutritional or chemical value of the feed. The facts of this case demonstrate that the feed formula used here was determined by defendant. Plaintiff mixed only those ingredients provided by defendant or those purchased by plaintiff at defendant's instruction. Plaintiff made no guarantee of the nutritional or chemical value of the finished product. K.S.A. 2-1001, *et seq.*, did not apply in this case and the trial court was correct in its rulings on those issues controlled thereby.

The remaining issue involves the trial court's refusal to allow Robert H. Guntert, director of the control division of the Kansas State Board of Agriculture, to testify as an expert on grain milling and feed mixing. Defendant offered his testimony to establish that the process used by plaintiff constituted preparation of a customer formula feed.

For a witness to testify as an expert on a particular subject, the witness must have skill or experience in the business or profession to which the subject relates. The admissibility of his testimony is within the sound discretion of the trial court. (*Plains Transp. of Kan. v. King*, 224 Kan. 17, 21, 578 P.2d 1095 [1978].) This witness had no experience as a mill operator or feed mixer. In fact, he admitted that he didn't pass himself off as an expert in any of these fields. He was an entomologist and administrative director of several programs within the agriculture board. The trial court did not err in restricting the scope of his testimony.

The judgment of the trial court is affirmed.