(661 P.2d 820)

No. 54,184*

E. J. Meinhardt and Rita Meinhardt, *Appellants,* v. Kansas Power and Light Company, *Appellee.*

Opinion filed January 20, 1983.

*Randall J. Forbes* and *John R. Hamilton,* of Crane, Martin, Claussen, Hamilton & Forbes, of Topeka, for appellants.

*Edward L. Bailey,* of Cosgrove, Webb & Oman, of Topeka, for appellee.

Before Foth, C.J., Spencer and Parks, JJ.

Parks, J.: In this condemnation proceeding the court-appointed appraisers awarded $191,314 to compensate the landowners, E. J. and Rita Meinhardt, for the property taken by condemner Kansas Power and Light's (KP&L) high voltage transmission lines. Condemner appealed to the district court and at trial the jury awarded $58,100. Landowners appeal the court's exclusion of part of its expert's testimony and the amount of interest assessed on the award.

The opinion testimony of a qualified expert is admissible to aid the jury in the interpretation of technical facts or to assist it in understanding the material in evidence. *Lollis v. Superior Sales Co.,* 224 Kan. 251, Syl. ¶ 1, 580 P.2d 423 (1978). For a witness to testify as an expert on a particular subject, the witness must have skill or experience in the business or profession to which the subject relates. *Choo-E-Flakes, Inc. v. Good,* 224 Kan. 417, 419, 580 P.2d 888 (1978). In addition, the qualifications of an expert witness and the admissibility of his testimony are matters for determination by the trial court in the exercise of its discretion. *Curtis v. Freden,* 224 Kan. 646, 649, 585 P.2d 993 (1978).

The testimony of Dr. Beck which the court refused to admit concerned the alleged hazardous biological effects created by

*Reporter's Note: Pursuant to Rule 7.04 this previously unpublished opinion was made published by an order of the Supreme Court dated March 31, 1983.

overhead transmission lines. The court excluded this testimony for three reasons. First, the qualifications of Dr. Beck related to engineering knowledge and did not include any medical credentials qualifying him to recognize a particular effect of electricity as harmful. Secondly, the data relied on by Dr. Beck was inconclusive enough that the jury would be forced to speculate whether the harm to the landowners was real and not simply significant as an influence on market value. And finally, the engineer's testimony concerning the harmfulness of the electricity did not relate directly to the only issue of concern in a condemnation appeal—just compensation. K.S.A. 26-508. After a careful review of the record and the law in this case we can find no abuse of discretion in the court's ruling.

Dr. Beck describes himself as a biomedical engineer; however, he has not had any formal medical training and is not able to conclusively state that hazardous biological effects are created by overhead transmission lines. Although Dr. Beck testified about the various research projects undertaken throughout the country and described their results, he admitted that few conclusions have been drawn from any of these studies. Furthermore, in response to the question of whether he holds himself out as having the medical expertise to say that the electromagnetic field coming from a power line is a health hazard he stated, "I am working on that. I don't think anyone feels that their, have the full answer yet, but I only know what evidence is currently available, and much of that my preparation allows me to interpret and present." Therefore, considering Dr. Beck's lack of medical credentials and the inconclusive nature of the studies on which his opinion would be based, we agree with the district court that to have admitted the proffered testimony would have invited speculation by the jury concerning the landowners' loss.

The landowners' rationale for permitting Dr. Beck to testify was that his expert opinion was necessary to meet the foundational burden imposed in *Willsey v. Kansas City Power & Light Co.*, 6 Kan. App. 2d 599, 631 P.2d 268, *rev. denied* 230 Kan. 819 (1981), for the admission of opinion testimony taking into account public fear of power lines. It should first be noted that the landowners' appraisers were allowed to testify without objection. In addition, the landowners misconstrue the holding of *Willsey*. There the court concluded that while neither the owner

nor anyone else may base an opinion of value on personal fear of power lines, an opinion of value of a qualified witness based on the existence of fear in the buying public in general which affects market value is admissible. *Willsey*, 6 Kan. App. 2d 599, Syl. ¶ 6. The court did not specify a minimum level of foundational testimony regarding the reasonableness of the public fear which must be produced before an appraiser's opinion which takes that fear into account may be admitted. Instead, the court held that the *Willsey* facts met the most stringent burden which could be justifiably applied against the landowner. Since the testimony of the expert appraisers concerning the basis of public fear in this case was nearly identical to the testimony found sufficient in *Willsey,* no additional evidence by Dr. Beck was needed to validate these opinions. In sum, while the district court's exclusion of Beck's testimony was justifiable in the exercise of the court's discretion because of Beck's lack of medical credentials or empirical evidence of the harmfulness of electromagnetic fields, the court was also correct in concluding that the evidence was not germane to the issue of market value.

We now consider plaintiffs' claim that the trial court did not award the correct amount of post-judgment interest.

K.S.A. 26-511 is a specific statute regarding interest to be awarded in condemnation cases and it applies in the stead of the more general provision of K.S.A. 16-204. *Schwartz v. Western Power & Gas Co., Inc.,* 208 Kan. 844, 851, 494 P.2d 1113 (1972). However, although K.S.A. 26-511 provides that interest at the rate of six percent per annum shall be paid from the time payment was made to the clerk to the date of judgment, no post-judgment rate of interest is specified. Accordingly, the trial court held that the return of the difference of $133,214 (the court-appointed appraisers' award of $191,314 less the jury verdict of $58,100) was subject to the six percent rate of interest from April 8, 1980, until January 22, 1982, the date of judgment. Since no rate of post-judgment interest was stated in the condemnation statutes, the court held that the provisions of K.S.A. 16-204(*a*) should apply. We agree.

This statute simply states as follows:

"*All judgments* of courts of this state which are rendered on or after July 1, 1980, shall bear interest from the day on which they are rendered, at the rate of twelve percent per annum, except as otherwise provided." [Emphasis added.]

Although there appears to be little justification for a different interest rate to apply post-judgment, a court has no right to enlarge the scope of the statute or to amend it by judicial interpretation. *Coe v. Security National Ins. Co.*, 228 Kan. 624, 629, 620 P.2d 1108 (1980). Thus, since no rate is otherwise provided in the condemnation provisions, the rate of interest accruing after January 22, 1982, was correctly held to be 12 percent per annum.

Affirmed.