No. 54,334

Ray E. Powers, *et al., Appellants,* v. Kansas Power & Light Co., *et al., Appellees.*

(671 P.2d 491)

Opinion filed October 21, 1983.

*Thomas Thompson*, of Stoup & Thompson, of Kansas City, Missouri, and *H. Reed Walker*, of Barnett & Lerner, Chartered, of Kansas City, Kansas, argued the

cause; *James M. Barnett*, of Barnett & Lerner, Chartered, and *Arthur H. Stoup*, of Stoup & Thompson, were on the briefs for appellants.

*Frederick K. Starrett*, of Fisher, Ochs and Heck, P.A., of Topeka, argued the cause and was on the brief for appellee Kansas Power & Light Company.

*Jerome V. Bales*, of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, argued the cause, and *Michael P. Oliver*, of the same firm, was with him on the brief for appellee Contractors Supply Company.

*William M. Modrcin*, of Morris, Larson, King, Stamper & Bold, of Kansas City, Missouri, argued the cause; *Gordon N. Myerson*, of the same firm, and *Dennis Horner*, of Horner, Duckers & Cornwell, of Kansas City, Kansas, were with him on the brief for appellee Bucyrus-Erie Company.

The opinion of the court was delivered by

MILLER, J.: This is an appeal by plaintiff, Ray E. Powers, from a judgment entered in District Court of Wyandotte County following a month-long jury trial and from the order overruling his motion for a new trial. Plaintiff's extensive personal injury claims arose on July 29, 1975, when a crane on which he was working came into contact with a high voltage power line. He brought this action against Kansas Power & Light company, owner of the power line; Bucyrus-Erie Company, manufacturer of the crane; and Contractors Supply Company, the owner and lessor of the crane. His claims against Kansas Power & Light (KP&L) were based upon negligence, and against Bucyrus-Erie Company (B-E) and Contractors Supply Company (CSC) on both negligence and strict liability in tort. Plaintiff's employer and the lessee of the crane, United Structural Erectors, Inc., (USE) was joined as an additional party defendant, pursuant to K.S.A. 60-258a(*d*), on motion of the defendants for the purpose of having the percentage of its causal negligence determined. The jury returned a verdict finding the plaintiff to be ten percent and United Structural Erectors ninety percent at fault, and absolved the other defendants of contributing to or causing the injuries and damages. Plaintiff raises a number of issues, which we will separately state and determine later in this opinion.

The accident occurred during the construction of a new high school at Atchison, Kansas. Plaintiff was employed as an oiler for United Structural Erectors, a subcontractor on the job. USE was using a thirty-five ton lattice boom Bucyrus-Erie mobile crane which it was leasing from Contractors Supply Company. At the time of the accident, the crane was equipped with a 100-foot boom to which was attached a 20-foot jib. On the day of the

occurrence, plaintiff drove the mobile crane and moved it from one side of the building to another. It was then necessary to level and stabilize the crane in its new location. During this operation, plaintiff stood on the ground and reached up on the crane to operate the controls of the outriggers. The crane operator, Joe Deatherage, moved the boom so that its position was away from the school and unfortunately, in the direction of KP&L's high voltage power lines. An iron worker, Clyde Farlow, was up on the bed of the crane, checking its position with a carpenter's level. Plaintiff did not think that his job included looking out for power lines; others testified that this was one of the oiler's duties. The power lines were approximately 110 feet away and they were in compliance with all of the applicable electrical codes. Plaintiff, Deatherage and Farlow had all seen the power lines, but none of them were looking at or worrying about the high voltage lines.

As the plaintiff and the other two men went about the leveling process, the boom began to descend, coming down over the power lines. A foreman, standing nearby, yelled a warning and the operator attempted to raise the boom, but it was too late. The boom touched or nearly touched the electric line. Plaintiff, standing on the ground and touching the crane, was badly burned when the crane was electrified; neither Deatherage nor Farlow, both of whom were standing atop the crane, was injured. There was nothing mechanically wrong with the crane. It was examined carefully after the accident and no defects were found. USE continued to use the same crane on the same job site for months after the accident occurred,with no mechanical problem. If the crane had been put in neutral by its operator, the boom should not have descended.

There was much testimony about proximity warning devices and insulated links. Proximity warning devices are simply electrical mechanisms which sound an alarm or flash warning lights, or both, when the boom is approaching high voltage lines. An insulated link is designed to isolate the forward part of the hoist line or cable and cut off the flow of electricity should the suspended portion of the line come into contact with electric current. The crane in use at the time of injury was not equipped with either device. There was conflicting testimony about the effectiveness and desirability of equipping a crane with these

safety devices. Additionally, plaintiff claims there were "no printed warning signs of contact with electrical lines" on the crane. This claim is disputed, and defendant presented evidence that there was an electrical warning sign on the cab of the crane.

Other evidence will be discussed as required in connection with the claims of error.

I. THE JURY INSTRUCTIONS

Plaintiff first claims that the trial court erred in its instructions to the jury and particularly in regard to instructions Nos. 3, 8 and 9. Before we go into the specific claims of error, we should first note some of the principles which guide us in reviewing claims of instructional error.

K.S.A. 60-251(b) provides:

"(b) *When waived*. No party may assign as error the giving or failure to give an instruction unless he or she objects thereto before the jury retires to consider its verdict stating distinctly the matter to which he or she objects and the grounds of his or her objection unless the instruction is clearly erroneous."

Where no objection is made to an instruction it becomes the law of the case unless it is clearly erroneous. *Black v. Don Schmid Motor, Inc.*, 232 Kan. 458, 472, 657 P.2d 517 (1983); *Iseman v. Kansas Gas & Electric Co.*, 222 Kan. 644, 649, 567 P.2d 856 (1977). An instruction is clearly erroneous when the reviewing court reaches a firm conviction that if the trial error had not occurred there was a real possibility that the jury would have returned a different verdict. *State v. Stafford*, 223 Kan. 62, 65, 573 P.2d 970 (1977).

Error cannot be predicated on the trial court's refusal to give an instruction when its substance is adequately covered in other instructions. *Black v. Don Schmid Motor, Inc.*, 232 Kan. at 474; *Van Hoozer v. Farmers Insurance Exchange*, 219 Kan. 595, 614, 549 P.2d 1354 (1976).

Instructions are to be considered together and read as a whole, without isolating any one instruction. If jury instructions properly and fairly state the law as applied to the facts in the case when considered as a whole, and if the jury could not reasonably be misled by them, the instructions should be approved on appeal. *Timsah v. General Motors Corp.*, 225 Kan. 305, 315, 591 P.2d 154 (1979); *Black v. Don Schmid Motor, Inc.*, 232 Kan. at 474-75.

Instruction No. 3, as given by the trial court, is the "issues"

instruction. It follows the familiar format of PIK Civ. 2d 6.01, setting forth the plaintiff's claims, the defendants' various defenses, and the burden of proof. Plaintiff challenges this instruction and contends that it was wrong in many ways, and that it constitutes prejudicial error.

Plaintiff first contends that Instruction No. 3 did not specifically inform the jury that plaintiff was entitled to recover against Bucyrus-Erie and Contractors Supply under *either* of two separate and distinct theories, negligence or strict liability. He now claims that the trial court should have included the sentence proposed in the notes to PIK Civ. 2d 6.01:

" 'The plaintiff in this case bases his recovery on two different theories, one upon negligence, and the other based upon implied warranty. If you find in the plaintiff's favor on either theory, he may recover in this case.' "

Alternatively, plaintiff suggests that the trial court should have included the following statement from PIK Civ. 2d 13.26 (1981 Supp.):

"It is not necessary for the plaintiff to sustain the burden of proof upon each theory of liability upon which he brings his action. If the plaintiff sustains his burden of proof on any one or more of the theories relied upon by him against [the] [a] defendant, that is sufficient to allow you to proceed to the question of comparative fault . . . ."

There are several difficulties with plaintiff's argument. The 1981 PIK supplement from which the last quotation comes was not issued until the month following the date on which the jury returned its verdict in this case and thus Section 13.26 was not available to counsel or the trial court at the time of trial. Further, neither of the now-proposed instructions was requested by the plaintiff, nor was the trial court's attention called to the notes on use published with PIK Civ. 2d 6.01. In fact, among the plaintiff's requested instructions is proposed instruction No. 13, which the court followed; the trial court instruction No. 3 is taken verbatim from plaintiff's proposed and requested instruction No. 13. Like the instruction given, plaintiff's proposed instruction contains no language explicitly stating that plaintiff need only succeed on one of the two theories relied upon.

As given, instruction No. 3 first lays out the ways that the plaintiff claims Kansas Power & Light was negligent. It then lays out the ways plaintiff claims Bucyrus-Erie was negligent, stating the claims of negligence in the alternative. Next, by separate

paragraph, the instruction states that plaintiff also claims that "Bucyrus-Erie Co., manufactured a crane in a defective condition unreasonably dangerous to plaintiff which caused him physical harm." Thus, the negligence claims against the manufacturer are followed in a separate paragraph by a statement of the strict liability claim. The same format is then followed as to plaintiff's claims against Contractors Supply. Instruction No. 3 is followed by various separate instructions defining negligence as applied to utility companies, manufacturers, distributors, and lessors. These are followed by several separate instructions detailing the duties of manufacturers and of lessors, and fully explaining plaintiff's claims of strict liability in tort. The theory of products liability was clearly distinguished from the negligence theory, and the application of each theory was covered not only in the instructions but by the parties in oral argument. Considered as a whole, the instructions were not misleading; the grounds of negligence were given in alternative form followed by a statement of the claims of strict liability, which appear to be alternatives open to the jury. We conclude that instruction No. 3 was not clearly erroneous upon the ground urged, and that the verdict would not have been different had the court included one or both of the statements now urged.

Plaintiff next complains that instruction No. 3 commingled defenses of strict liability and negligence. There was no specific objection to instruction No. 3 upon this ground; further, with reference to the statement of the defenses, the trial court followed the instruction proposed by the plaintiff. The defenses of negligence on the plaintiff's part were set forth within instruction No. 3 and then, in instruction No. 15, the trial court set forth the separate defenses of Bucyrus-Erie and Contractors Supply to the strict liability claims against them. We find no commingling of inapplicable defenses.

Instruction No. 3 also included a listing of the ways in which KP&L, Bucyrus-Erie and Contractors Supply contend that plaintiff's employer and its crane operator were at fault. The plaintiff claims that no pleadings specifically allege the fault of his employer. This issue was tried by consent without objection. In addition, plaintiff claims that there was no evidence to support allegations of various acts of negligence by his employer, United Structural Erectors, which are listed in instruction No. 3.

We have examined the instruction carefully and find that there was evidence to support inclusion of the various items enumerated. For example, plaintiff complains that there was no evidence of any failure to obey the company work rules. The company had printed work rules, but plaintiff was never given a copy and was never given any training. There was evidence of failure to enforce the work rules and failure of the employees to obey them. Again, despite plaintiff's claim to the contrary, there was evidence that the crane operator failed to comply with the crane users' manual, and there was evidence that he failed to check the crane's controls to insure that they were in a correct position when he left the operator's cab shortly before the accident. The various subparts of the instruction listing the claims of negligence as against USE were detailed, but each appears to address a different act of negligence. We do not find them overly repetitious as plaintiff claims. Finally, plaintiff contends that the trial court erred in failing to request proposed instructions from USE. We fail to see how this could have been prejudicial to the plaintiff, and note that this argument was not raised in the trial court. USE certainly had the opportunity to present proposed instructions if it desired to do so.

Next, plaintiff claims that instruction No. 9 is erroneous as a matter of law because the court spelled out three factors to be considered in determining whether the manufacturer exercised proper care in design, including a state of the art defense, and in not restricting this defense to the negligence claims. In substance, plaintiff is contending that the trial court confuses the two theories of strict liability and negligence and defenses thereto in this instruction. We do not so read it. The plaintiff asserted both claims of negligence and products liability against the manufacturer, Bucyrus-Erie. Instruction No. 9 is a negligence instruction. It starts with a statement that negligence is a lack of ordinary care under existing circumstances and ends with a statement that conformity to the practices of other manufacturers in the field is not conclusive of ordinary care. We find no confusion of theories whatever in this instruction. The state of the art language in the instruction deals only with negligence and is clear and unequivocal. Instruction No. 11 deals with the theory of products liability on the part of the manufacturer and discusses it fully; other following instructions set forth the de-

fenses thereto. The cases cited by plaintiff involve instances in which the plaintiff's claims were based solely upon strict liability in tort, and those cases were not helpful here where both negligence and strict liability were relied upon.

As his final claim of error in the instructions, plaintiff contends that instruction No. 8 was a misstatement of the law concerning the duty of care applicable to Kansas Power & Light. This instruction presents precisely the rules set forth in *Henderson v. Kansas Power & Light Co.*, 184 Kan. 691, 339 P.2d 702 (1959), as recently restated in *Wilson v. Kansas Power & Light Co.*, 232 Kan. 506, 514-15, 657 P.2d 546 (1983):

> "For convenience the applicable rules of law as stated in *Henderson v. Kansas Power & Light Co.*, 184 Kan. 691, are repeated:
>
> '[A]s a general rule electric companies which erect and maintain such lines are under a duty to exercise the highest degree of care to protect the public from danger.
>
> " '[T]he degree of care required of distributors of electricity is the degree which would be used by prudent men engaged in the industry, under like conditions and commensurate with the dangers involved and the practical operation of the plant, to guard against contingencies which can be reasonably foreseen and anticipated, but such distributors are not liable for occurrences which cannot be reasonably anticipated and are not insurers against accidents and injuries.' 184 Kan. at 695-96."

We find no merit in plaintiff's claims of error in the instructions.

II. Excusing United Structural Erectors from Appearance at Trial

On motion of KP&L, United Structural Erectors, plaintiff's employer, was joined in this lawsuit as an additional defendant in order to allow comparison of its fault. Ten days before trial, USE filed a motion asking that it be excused from attendance at trial. We find no objection or response to this motion from plaintiff. When the parties first appeared for trial, counsel for USE appeared and asked to be excused. Plaintiff, who was present, did not object. Under the Workmen's Compensation Act, USE had no liability to the plaintiff outside of that act, K.S.A. 44-501, and had no interest in the litigation other than its subrogation interest created by K.S.A. 44-504. The trial court sustained the motion and USE did not participate in the trial. A point not raised before or presented to the trial court may not be raised for the first time on appeal. *Anderson v. Overland Park Credit Union*, 231 Kan. 97, Syl. ¶ 6, 643 P.2d 120 (1982). Additionally, we held in *Brown v. Keill*, 224 Kan. 195, 580 P.2d 867 (1978), that

the fault of an immune party or one who is not or cannot be joined as a party may be considered in determining the relative causal fault under K.S.A. 60-258a. Thus, regardless of whether USE was joined as a party or whether it took an active part in the proceedings, a determination of its causal fault was proper. There is no claim that it did not cooperate. Indeed, we note that a number of its employees were called and appeared as witnesses during trial.

Plaintiff also claims that USE should have been aligned as a plaintiff because of its subrogation interest and because its interest was adverse to those of the defendants. This matter was not raised in the trial court and we find no prejudice or error in the trial court's adding the employer as an additional party defendant. In support of this claim of error the plaintiff relies upon *Baird v. Phillips Petroleum Co.,* 535 F. Supp. 1371 (D. Kan. 1982). That opinion, however, merely concludes that an injured workman may avoid the automatic assignment provisions of K.S.A. 44-504(c) by pleading his cause of action as one for himself, his employer, and his workmen's compensation insurer as their interests may appear. The plaintiff here, however, did not bring this action on behalf of himself, his employer, and his workmen's compensation carrier. Rather, he was content to bring the action in his individual capacity. The employer was joined as an additional party defendant on motion of KP&L. We find no merit in plaintiff's argument on this issue.

III. RULING ON THE MOTIONS IN LIMINE

Defendants KP&L and Bucyrus-Erie filed motions in limine asking that all testimony and evidence concerning prior electrical contacts between cranes and electrical lines, and prior claims against the defendants involving such contacts, be excluded from mention and introduction at trial. Plaintiff claims that the trial court made a final ruling on the motions. Contrary to the plaintiff's assertion here, the trial court sustained the motion in limine only as to voir dire and opening statements, reserving his judgment on the use of such evidence at trial until the question arose. During the trial, plaintiff was permitted to and did introduce much evidence that cranes have frequently hit power lines in the past causing death and personal injury, and that such accidents are common, thus establishing foreseeability, knowledge and appreciation of the danger. The trial court refused to let plaintiff

introduce evidence as to earlier specific claims and lawsuits against the defendants arising from prior crane-power line accidents. Evidence of prior similar accidents is admissible to prove foreseeability. *Pape v. Kansas Power & Light Co.*, 231 Kan. 441, 445, 647 P.2d 320 (1982). Evidence of such occurrences, however, must involve substantially the same circumstances as the case at issue. *Rexrode v. American Laundry Press Co.*, 674 F.2d 826 (10th Cir. 1982). We find no showing here that the other instances plaintiff sought to introduce in evidence were factually similar to the case at bar. Furthermore, plaintiff was not prevented from showing the foreseeability of contacts, as well as the defendants' knowledge and appreciation of the danger. Upon the record before us there could be no question but that KP&L, Bucyrus-Erie and Contractors Supply, as well as the general construction and electrical supply industries, are aware of the dangers of crane-power line contacts; that such contacts are frequent and foreseeable; and that such contacts present a danger to persons involved. The trial court did not err in excluding the proffered evidence.

IV. LIMITATION ON EXPERT TESTIMONY

Before the commencement of trial, the trial court placed limitations upon the number of experts which each party could call. Plaintiff was limited to six expert witnesses, three against KP&L and three against B-E and CSC. Each of the three defendants was limited to three expert witnesses. At trial, plaintiff called six expert witnesses, three electrical experts and three crane experts. KP&L called only one expert and B-E and CSC called a total of two experts.

Limiting the number of expert witnesses is clearly a matter within the discretion of the trial court. K.S.A. 60-216 reads in part:

"In any action, the court shall on the request of either party, or may in its discretion without such request, direct the attorneys for the parties to appear before it for a conference to consider:

. . . . .

"(5) The limitation of the number of expert witnesses."

Likewise, Supreme Court Rule No. 140 (230 Kan. lxxxiv) provides that at the pretrial conference, limitations upon the number of expert and cumulative witnesses for each side will be considered and ruled upon.

Plaintiff acknowledges that the trial judge had discretion to limit the number of expert witnesses, but claims that the court could not limit the scope of their testimony. He contends that the three expert witnesses whom he called against KP&L were not allowed to testify against the other defendants and one of his crane experts was not allowed to testify against KP&L. In effect plaintiff contends that he should have been permitted to use all six witnesses against each defendant.

In *State v. Bright,* 229 Kan. 185, 191, 623 P.2d 917 (1981), we said:

"As Justice Rousseau Burch observed in *State v. Elftman,* 116 Kan. 214, 230, 226 Pac. 795 (1924), the authority of a trial court to limit the number of witnesses upon a single issue is undoubted."

Also, in *State v. Churchill,* 231 Kan. 408, 413, 646 P.2d 1049 (1982), we said:

"It is well established that the qualifications of expert witnesses and the admissibility of expert testimony are matters which lie within the sound discretion of the trial court; its rulings upon such testimony will not be disturbed on appeal, unless the appellate court finds an abuse of discretion."

Also, in *Friesen v. Chicago, Rock Island & Pacific Rld.,* 215 Kan. 316, 524 P.2d 1141 (1974), Syl. ¶ 6 reads as follows:

"Error may not be predicated upon the exclusion of evidence which is merely cumulative and does not add materially to the weight or clarity of that already received."

There can be no question but that the trial court has wide discretion in limiting the number of expert witnesses. Even with the court's limitation, plaintiff presented twice the number of experts called by the opposing parties. Plaintiff does not indicate that the additional testimony of his experts would have been other than cumulative. The trial judge wisely chose to prevent the admission of excessive cumulative evidence by limiting the number of experts that could be called as to the liability of the electrical company, and as to the liability of the crane manufacturer and the lessor. We find no abuse of discretion.

Additionally, plaintiff complains that counsel for Bucyrus-Erie impermissibly commented upon plaintiff's failure to put an electrical engineer on the stand to testify that the crane was unreasonably dangerous. We find this point without merit for two reasons. First, plaintiff chose not to call an electrical engineer as against Bucyrus-Erie, but instead called three crane

experts. The statement of counsel was true. Second, there was no contemporaneous objection to the argument, nor was this matter presented to the trial court during the motion for new trial, and thus the trial court was without an opportunity to rule upon it. Ordinarily, an issue not raised in the lower courts cannot be raised for the first time on appeal. *Boswell, Inc. d/b/a Reno County Adult Care Home v. Harkins,* 230 Kan. 610, Syl. ¶ 3, 640 P.2d 1202 (1982).

### V. EVIDENTIARY RULINGS AS TO TESTS

The trial court permitted the experts on both sides to state the basis of their opinions, including brief descriptions of tests that they had conducted and tests that were conducted by others. He would not permit the experts, however, to give overly detailed accounts of each and every test that the expert witnesses had conducted or knew about.

Plaintiff complains that the trial court refused to permit one of his experts, Ralph E. Armington, to testify about certain tests he had conducted. Plaintiff refers us to page 860 of the trial transcript, and on that page the trial court sustained an objection to the Armington testimony. The objection, however, was based upon lack of foundation for the proposed testimony. An additional objection was lodged because Armington was supposed to testify only against KP&L, and the proposed testimony would have constituted expert testimony against the crane manufacturer and the lessor. The trial court did not specify which objection it sustained. The referenced portion of the transcript discloses no error. Further, from examination of other portions of the transcript, it is apparent that the trial court applied the same rule to all parties. He permitted the expert to establish the basis for the expert's opinion, but he did not permit the experts to go into specific details of all of the tests which formed the basis for the expert opinion. We find no error.

### VI. LIMITATION ON THE DEATHERAGE TESTIMONY

Mr. Deatherage, the crane operator, had been operating a different Bucyrus-Erie crane in 1973 or 1974, when that crane's boom suddenly went down. He started to testify about that incident. Defense counsel objected and the trial court sustained the objection. Plaintiff then made a proffer, and read from Deatherage's deposition. The proffered testimony indicated that the air cylinder on that crane was faulty, and that a previous

operator had hooked a screen door spring onto it. The spring broke while Deatherage was operating the crane, allowing the boom to come down. There was no evidence in the case at bar that the air cylinder on the crane here involved was faulty, or that it had any mechanical defect. Likewise, no screen door spring had been used as a replacement part on this crane. Under K.S.A. 60-445 a trial judge may exclude evidence when the chance of prejudicing the jury outweighs the probative value of the evidence. The judge is given wide discretion under that statute. See *Schaeffer v. Kansas Dept. of Transportation,* 227 Kan. 509, 518, 608 P.2d 1309 (1980). Under the circumstances, the trial court's ruling was reasonable, and there was no abuse of discretion. Plaintiff also complains that Deatherage was not allowed to give an "expert" opinion on why the crane's boom came down. Although an objection was sustained when the witness was asked his opinion, he was later asked if it was normal in his experience in the operation of a crane for the boom to go down when the controls are placed in neutral. He responded that it was not, if the "dog" engages. He was then asked if he knew anything else other than the dog not engaging which would cause the boom to go down, and he responded that he knew of no other reason. Thus, his opinion, that the only reason that the crane boom could have gone down was a failure of the dog, or pawl, to engage the teeth of the ratchet wheel, was clearly stated in evidence. We conclude that there was no improper limitation placed upon Deatherage's testimony.

VII. Excluding the Videotaped Demonstration

One of plaintiff's witnesses, a mechanical engineer, made a videotape of a proximity warning device in use on a crane. The trial court sustained a motion to exclude the videotape, ruling that the tape depicted a staged demonstration in which the conditions were not sufficiently similar to those at issue to warrant admission, and holding further that the videotape would not add to the jury's understanding of proximity warning devices. The crane used in making the videotape was much smaller than that involved in the case at bar; it was an Ohio crane, not a Bucyrus-Erie; it had a shorter boom; it was mounted on a railroad car; and it was equipped with a different type of warning device than that which had been introduced into evidence. Furthermore, plaintiff produced in court a proximity warning device,

and the jury was permitted to see how the device worked, to hear the noise it makes, and to see the warning lights. The substance of the material included within the videotape was fully presented to the jury at trial. As we noted earlier in this opinion, error may not be predicated upon the exclusion of cumulative evidence.

VIII. EXCLUDING NEWS REPORTS

At trial, out of the hearing of the jury, counsel for one of the defendants stated that he would object to the mention by plaintiff's witnesses of newspaper accounts of prior unrelated contacts between cranes and power lines. The judge responded that the articles would be improper as they were hearsay. Plaintiff now contends that this was error.

The record contains no offer of proof as to the content of the newspaper articles, and we do not find the articles in the record on appeal. Plaintiff claims that the newspaper articles are admissible under K.S.A. 60-460(cc), the learned treatise exception to the hearsay rule. Plaintiff cites no authority that newspapers are learned treatises on the subject of crane-power line accidents, and we hold that they are not. Plaintiff further claims that the news articles were admissible to show notice, knowledge, and state of mind—in short, to show that the defendants knew of prior contacts between cranes and power lines. As such, the news articles would have been merely cumulative evidence, since there was much evidence in the record showing that the defendants were aware of such accidents, and of the resulting dangers. We find no error.

IX. JUDICIAL PREJUDICE

Finally, the defendant contends that the trial judge exhibited such a strong preference for the defense that reversible error was committed. In support of this contention, he raises many of the matters we have already ruled upon—the limitation on expert witnesses, the exclusion of plaintiff's videotape exhibit, and other points. In addition, plaintiff contends that the trial court helped CSC's lawyer introduce an exhibit by coaching him. The record, however, indicates that the trial court made similar suggestions to both plaintiff's counsel and to defendants' counsel at various times in order to insure the proper receipt of documentary evidence and to expedite the trial. Further, plaintiff claims he was denied the right of rebuttal, but the record shows

that the trial court merely limited the plaintiff's proffered evidence to the rebutting of defense evidence. The mere fact that the court did not permit the plaintiff to offer on rebuttal cumulative evidence or additional evidence which could have been introduced in the case in chief does not indicate prejudice. As Justice Fromme said in *Country Club Home, Inc. v. Harder*, 228 Kan. 756, 762, 620 P.2d 1140 (1980):

"Obviously the charges of bias, prejudice and manifest injustice come more as a result of the adverse decision than from any improper action on the part of the judge."

Plaintiff's claim of prejudice on the part of the trial judge is not sustained by the record.

This case was ably and fully tried by competent counsel before an able trial judge. We find no reversible error.

The judgment is affirmed.