MARGARET S. RYAN, DENNIS E. RYAN, and SUE A. RYAN, *Appellees,*
v. KANSAS POWER & LIGHT COMPANY, *Appellant.*

No. 64,381

CLARENCE A. DICKSON, JR., and JEANETTE R. DICKSON, *Appellees,*
v. KANSAS POWER & LIGHT COMPANY, *Appellant.*

(815 P.2d 528)

Opinion filed July 12, 1991.

*Robert D. Beall,* of Davis, Beall, McGuire & Thompson, Chartered, of Leavenworth, argued the cause and was on the briefs for appellant.

*L. D. McDonald, Jr.,* of McDonald Law Firm, of Overland Park, argued the cause, and *Ronald D. Garrison,* of the same firm, was with him on the briefs for appellees.

The opinion of the court was delivered by

HERD, J.: This is a condemnation case in which Kansas Power & Light Company (KPL) appeals from the judgment of damages awarded by separate juries to the Ryans and Dicksons, landowners in easement condemnation proceedings. Primarily, KPL alleges error in the admission of testimony by non-expert witnesses regarding fear in the marketplace of high voltage electrical transmission lines and its effect on property valuation. Due to the

similarity of the issues raised by KPL on appeal, the landowners' cases have been consolidated.

In April 1989, KPL took by right of eminent domain a 100-foot easement across 80 acres of real estate in Leavenworth County, Kansas, owned jointly by Margaret Ryan, Dennis Ryan, and Sue Ryan. The easement authorized KPL to erect "H" frame towers on the property supporting a 115,000-volt power line. The property upon which the easement lay contained two homesteads, cropland, and prairie grass. Court-appointed appraisers awarded $12,300 damages for the 10-acre tract and $4,761 for the 70-acre tract. The Ryans appealed the damages award to the district court.

At trial, one of the Ryans' expert witnesses testified the damages to the 10-acre tract, in his opinion, was $16,750. He found the damages on the 70-acre tract to be $22,100. A second expert for the Ryans found damages on the 10-acre tract to be $15,525 and on the 70-acre tract to be $33,250.

KPL's experts determined damages on the 10-acre tract to be $12,300 and $4,100 and on the 70-acre tract to be $4,760 and $830.

The jury found the before valuation of the 10-acre tract was $65,000 and the after value was $50,000, awarding $15,000 damages. The jury found $155,000 was the value of the 70-acre tract before the easement and $139,000 after the easement, and awarded $16,000 damages. KPL appeals the jury award of damages.

Also in April 1989, KPL acquired an easement across 120 acres of real estate in Leavenworth County, Kansas, owned jointly by Clarence and Jeanette Dickson. Like the easement acquired on the Ryans' property, this easement authorized KPL to construct a 115,000-volt electrical power line across the Dickson property. The Dickson property contains a homestead, a herd of cattle, and brome grass. Court-appointed appraisers awarded $11,091 for damages to the property. The Dicksons appealed to the district court. In addition, the Dicksons alleged fraud by KPL in withholding information from the general public on the effect the transmission line would have outside the area of the easement on plants, animals, and humans.

Experts for KPL testified at trial that the damages to the property were $11,091 and $10,500. Experts for the Dicksons offered

damage estimates of $54,000 and $48,940. The jury returned a verdict in favor of the landowners and awarded damages of $21,200. KPL appeals the jury award for damages.

I

The first issue we consider is whether the trial court erred in allowing testimony on the topic of fear in the marketplace by witnesses other than expert witness appraisers. KPL contends only experts in appraisal and valuation can testify as to the factors within their personal knowledge which affect the value of the property appraised. KPL alleges that landowners and other witnesses are not competent to testify regarding fear in the marketplace.

The landowners argue lay testimony of fear in the marketplace based upon the hazardous effects of high-power transmission lines was properly admitted as a foundation for the expert's conclusion that fear existed in the marketplace, which reduced the value of the property.

Both parties rely upon *Willsey v. Kansas City Power & Light Co.,* 6 Kan. App. 2d 599, 631 P.2d 268, *rev. denied* 230 Kan. 819 (1981), in support of their argument. In *Willsey,* the landowner's expert appraiser in a condemnation proceeding described the features he considered which contributed to and detracted from the property's value. The expert witness testified he personally observed some buyer resistance to purchasing property with high voltage overhead lines because of the unsightliness of the lines and because of buyers' latent fears of electrical transmission lines caused by warning advertisements published by electrical companies. 6 Kan. App. 2d at 601-02.

The Court of Appeals thoroughly examined the laws of this state and sister states to determine whether the expert testimony that public fear of electrical power lines reduced the market value of the condemned land was a noncompensable element of damages requiring the testimony to be stricken. The court held that conjectural damages are noncompensable, but found that a fear which is reasonable and affects the market value constitutes a compensable loss. 6 Kan. App. 2d at 611. Thus, the appraiser's testimony, that in his opinion fear of power lines was so widespread as to affect market value based upon electrical companies'

warnings, was properly admissible. 6 Kan. App. 2d at 613. Finally, the Court of Appeals emphasized that neither the landowner or anyone else could base an opinion of value on personal fear. However, the opinion of a qualified witness concerning value was found admissible if based on the existence of fear in the buying public in general. 6 Kan. App. 2d at 615.

Chief Judge Foth, speaking for the Court of Appeals in *Willsey*, pointed out that the courts which have addressed the issue have separated into three categories with regard to admitting evidence of fear in the marketplace as affecting value of land. The so-called "majority rule" is that such evidence is too conjectural and is, therefore, inadmissible. The second or "intermediate rule" permits such evidence but requires the fear to be reasonable. The third and so-called "minority view" is that any evidence of fear in the marketplace obviously affects value and is admissible regardless of its reasonableness so long as the fear is not the personal fear of the witness. 6 Kan. App. 2d at 604-05.

After examining the Kansas cases on point, Chief Judge Foth determined such evidence was admissible but found that prior Kansas case law had not adopted the intermediate rule or the minority rule. He made this comment:

"We therefore regard the question as an open one in this jurisdiction. As we see it, in any condemnation case the objective is to compensate the landowner for damages actually suffered. Remote, speculative and conjectural damages are not to be considered; the owner cannot recover today for an injury to his child which he fears will happen tomorrow. *Logic and fairness, however, dictate that any loss of market value proven with a reasonable degree of probability should be compensable regardless of its source. . . .*

"This rationale obviously leads to the third, misnamed 'minority rule', which is the one we prefer. In this case, however, we need not go so far. The facts here meet the test of the 'intermediate' rule, which we believe is the most stringent rule which can justifiably be applied against the landowner." (Emphasis added.) 6 Kan. App. 2d at 611.

Thus, the Court of Appeals found admission of testimony concerning fear in the marketplace was proper without definitively deciding whether it was adopting the intermediate rule or the minority rule. Chief Judge Foth stated, however:

"Once again, however, the evidence in this case makes it unnecessary for us to choose. The landowners' expert testified to the perceived basis for popular fear, and that was the warning campaigns conducted by electric

utilities themselves. He spoke of those campaigns from personal knowledge; their existence was not disputed, though their significance was. Although not a factor in our decision, it seems highly inconsistent for a company to warn the public repeatedly of the danger with which an instrumentality is fraught, and then say the public fear of that instrumentality is groundless. A certain amount of fear and a healthy wariness in the presence of high voltage lines strikes us as eminently reasonable." 6 Kan. App. 2d at 614.

We submit that in effect the Court of Appeals adopted the "minority rule" in Kansas in *Willsey* and we agree with its rationale therein. Accordingly, in a condemnation action to acquire an easement for installation of a high voltage electrical line we find evidence of fear in the marketplace is admissible with respect to the value of property taken without proof of the reasonableness of the fear. As the above discussion indicates, fear of a high voltage line is reasonable.

Furthermore, we conclude from our analysis of *Willsey* and our adoption of the minority view that evidence of fear in the marketplace is admissible but that no witness, whether expert or non-expert, may use his or her personal fear as a basis for testifying about fear in the marketplace. However, any other evidence that fear exists in the public about the dangers of high voltage lines is admissible, regardless of its source. Thus, a landowner or any other non-expert witness can qualify as a witness to testify concerning fear in the marketplace if he or she establishes through foundation that members of the public have conveyed such information to the landowner or other non-expert witness.

The *Willsey* holding was affirmed in *Masson v. Kansas City Power & Light Co.*, 7 Kan. App. 2d 344, 345, 642 P.2d 113, *rev. denied* 231 Kan. 801 (1982), and in *Meinhardt v. Kansas Power & Light Co.*, 8 Kan. App. 2d 471, 661 P.2d 820 (1983). In *Meinhardt*, a condemnation proceeding, the trial court refused to admit the testimony of Dr. Beck concerning the alleged hazardous biological effects created by overhead transmission lines. The Court of Appeals affirmed the trial court ruling. Dr. Beck's qualifications contained no formal medical training, and he could not conclusively state that hazardous biological effects were created by the power lines. Rather, he testified as to various research projects conducted nationwide, but found few conclusions from

the studies. Thus, the court determined Dr. Beck's testimony would have unlawfully invited speculation by the jury concerning loss and was properly refused. 8 Kan. App. 2d at 472.

In *Meinhardt*, the landowner unsuccessfully alleged Dr. Beck's testimony was necessary to meet the foundational requirement imposed by *Willsey* for admission of opinion testimony taking into account public fear of power lines. In rejecting this argument, the Court of Appeals stated:

"[T]he landowners misconstrue the holding of *Willsey*. There the court concluded that while neither the owner nor anyone else may base an opinion of value on personal fear of power lines, an opinion of value of a *qualified witness* based on the existence of fear in the buying public in general which affects market value is admissible. [Citation omitted.] The court did not specify a minimum level of foundational testimony regarding the reasonableness of the public fear which must be produced before an appraiser's opinion which takes that fear into account may be admitted." 8 Kan. App. 2d at 472-73. (Emphasis added.)

The *Meinhardt* court concluded the district court properly excluded the evidence primarily because Dr. Beck failed to qualify as an expert on the biological effect of overhead transmission lines. Thus, the case did not turn on admissibility of evidence of fear in the marketplace although it affirmed *Willsey*. 8 Kan. App. 2d at 473.

In the condemnation proceedings presently under consideration, the landowners' expert real estate witnesses each testified that in their opinions, fear of electrical transmission lines existed in the buying public, which thereby reduced the value of the property. These conclusions were based upon personal experience and the observation of warnings executed by electric companies. The witnesses also stated they were aware of studies and articles dealing with the element of fear and the possible health hazards generated by high power transmission lines.

Counsel for the landowners also questioned non-expert witnesses and the landowners themselves about fear of electrical transmission lines. Two KPL employees testified they were aware of studies and literature regarding the effect of power lines on plants, animals, and humans and believed the studies were inconclusive. In addition, a realtor in the area testified that in his experience buyers resisted property with electrical power line

easements based on fear of the power lines and concluded this fear depressed the market value of such properties. The landowners also testified that they were aware of articles concerning the fear of effects of power lines on the environment and humans. Further, the landowners stated they had attended community meetings involving discussions of high power electrical lines and heard members of the community express their fear of such lines.

KPL contends the admission of non-expert testimony concerning fear of electrical transmission lines was prejudicial and an abuse of discretion. We do not agree.

The sole objective of a condemnation case is to compensate the landowner for actual damages suffered. Damages which are speculative, conjectural, or remote are not to be considered for compensation. However, any loss of market value proven with a reasonable degree of probability should be compensable, regardless of its source. *Willsey,* 6 Kan. App. 2d at 611.

In *Willsey* and *Meinhardt,* the Court of Appeals concluded a qualified witness should be allowed to testify as to his opinion that fear of power lines causes resistance by prospective purchasers and thereby reduces the market value of the property. Fear in the marketplace that actually reduces the value of the property is a factor considered by qualified witnesses in arriving at an opinion on the value of a specific piece of property.

The general purpose of allowing expert testimony on fear of electrical transmission lines is to show the factors considered by the witness in reaching an estimated value of the property and damages suffered. Non-expert witnesses are not qualified to testify concerning the value of the property. However, a non-expert qualified witness may corroborate and provide foundation testimony for the expert testimony on damages. A landowner who is qualified to testify as to the value of his own property is prohibited from testifying about personal fears of electrical transmission lines and its effect on the value of the property. See *Yagel v. Kansas Gas & Electric Co.,* 131 Kan. 267, 271, 291 Pac. 768 (1930). However, the landowner and other non-expert witnesses are not precluded from testifying about fear in the marketplace once the individual has been qualified by showing he has knowledge of such fears other than his own. Fear in the marketplace is not a technical subject requiring professional training to discern.

Rather, it is dependent upon knowing the opinion of others as to fear.

The same analysis applies to the case at hand. Fear of electrical transmission lines and the effect of this fear on the buying market was only one factor considered by the expert witnesses. The experts testified they also considered comparable sales, nuisance, and unsightliness in their calculations of damages. The landowners' presentation of witnesses and their testimony acknowledging an awareness of studies and articles dealing with the possible ill effects caused by electrical transmission lines laid a proper foundation for qualifying them as witnesses of fear in the marketplace. We find no error in the trial court ruling.

## II

Closely related to the first issue is KPL's assertion that the trial court abused its discretion in allowing testimony by the expert witnesses regarding fear in the general public based upon newspaper and magazine articles and other literary works and in allowing into evidence a magazine article to support the allegation of fear in the marketplace. KPL argues the articles were offered as hearsay and do not qualify for the learned treatise hearsay exception. K.S.A. 1990 Supp. 60-460(cc).

KPL properly argues that newspaper articles on the subject of hazardous effects of electrical transmission lines do not qualify for the learned treatise hearsay exception. *Powers v. Kansas Power & Light Co.*, 234 Kan. 89, 102, 671 P.2d 491 (1983). Nevertheless, newspaper articles are generally admissible to show public knowledge. *Hudson v. City of Shawnee*, 246 Kan. 395, 407, 790 P.2d 933 (1990). In the present action, the landowners did not introduce the articles to prove the fact that electrical transmission lines actually cause harm to plants, animals, and humans. Rather, the articles were admitted to support the expert's opinion of public awareness of the possible danger. See *Phillips Pipeline Co. v. Ashley*, 605 S.W.2d 514, 519 (Mo. App. 1980); *Arkansas Louisiana Gas Co. v. Cable*, 585 P.2d 1113, 1116 (Okla. 1978). Thus, the hearsay exception was inapplicable, the articles were properly admissible, and we find no abuse of discretion.

### III

Next, KPL alleges abuse of discretion by the trial court in failing to exclude portions of the testimony of two landowner expert witnesses. KPL contends it was error to allow the appraiser Jerald Job to give his opinion of the value of the Ryans' property at trial when he could not give an opinion of the value of the property at his deposition the day before the trial. KPL also asserts that neither of the Ryans' expert witnesses could state at their depositions that fear existed in the marketplace although both testified at trial that such fear existed. Thus, contends KPL, it was surprised at trial and had no time to prepare for the testimony in light of the expert's changed opinions. KPL argues it was error to deny its pretrial motion to exclude the testimony as contrary to K.S.A. 1990 Supp. 60-226(b)(4)(A)(i).

From the outset, we point out that KPL has failed to provide this court with a record of the depositions at issue. Therefore, we are limited to a review of the oral arguments at the pretrial motion to exclude the testimony. The Ryans concede that Job was unable to provide final figures at the deposition on his opinion of the market value of the property. However, Job explained at the deposition that to reach a final opinion it was necessary to confirm two comparable sales. Job provided an estimated value at the deposition and attempted to contact KPL's attorney that same evening to provide the attorney with his final opinion as to the value of the Ryans' property.

K.S.A. 1990 Supp. 60-226(b)(4)(A)(i) allows for discovery of facts known and opinions held by an expert by requiring the expert to state the substance of the facts and opinions to which he or she is expected to testify and a summary of the grounds for each opinion.

The trial court is vested with broad discretion in supervising the course and scope of discovery. *Berst v. Chipman,* 232 Kan. 180, 183, 653 P.2d 107 (1982). In addition, the trial court has discretion on the admission or exclusion of evidence, and that decision will not be disturbed on appeal absent a showing of abuse of discretion. *Schmeck v. City of Shawnee,* 232 Kan. 11, 32, 651 P.2d 585 (1982). The purpose of discovery is to eliminate the element of surprise from trials, to simplify issues and procedures by full disclosure to all parties of anticipated evidence

and factual and legal issues, and to consider such matters as may aid in the disposition of an action. *Burkhardt v. Philsco Products Co.*, 241 Kan. 562, 570, 738 P.2d 433 (1987).

At the deposition, Job stated his estimate of the value of the Ryans' property and told KPL's counsel that he could not give a final opinion until he confirmed two comparable sales. We find no prejudicial error in refusing to strike Job's trial testimony wherein he provided a final opinion of the value of property following his confirmation of the other comparable sales. K.S.A. 1990 Supp. 60-226 does not require that deposition testimony be final and conclusive. Rather, the statute provides a method of discovery for opinions and facts known by expert witnesses. In this instance, Job provided an estimate of his opinion on the value of the property based on the facts known to him at that time. Upon ascertaining all the facts, Job was able to make a final determination of the value of the property. Admission of the testimony at trial did not contravene the rules of K.S.A. 1990 Supp. 60-226, and we find no error.

Nor do we find error in the trial court's failure to strike the appraisers' testimony regarding fear in the marketplace. We have no record before us to show why the experts could not state fear existed at the time of discovery and why their opinion changed at the time of trial. However, we believe the issue of fear in the marketplace and its effect upon the value of the Ryans' property was well known to both parties and did not come as a surprise to KPL at trial. Finally, we find that full cross-examination of the experts was permitted so the jury could weigh the probative value of their testimony. *Rostine v. City of Hutchinson*, 219 Kan. 320, Syl. ¶ 7, 548 P.2d 756 (1976); *Bourgeois v. State Highway Commission*, 179 Kan. 30, Syl. ¶ 2, 292 P.2d 683 (1956). Thus, there was no prejudicial error in refusing to strike the testimony of either of the landowners' expert witnesses.

## IV

KPL argues the trial court erred in allowing testimony regarding appellant's duty to inform the public of inconclusive studies on the effects of electromagnetic fields on the environment. The landowners contend questions about the perceived duty of KPL to provide the public with information from studies on the

controversy of possible ill effects caused by electrical transmission lines was relevant to the issue of whether there was sufficient information available to the buying public to support an expert opinion that a general fear of power lines would negatively affect the value of the landowner's property.

We have already determined there is no minimum foundational requirement which must be met for a witness to testify concerning his or her opinion that fear exists in the marketplace and that such fear depletes the value of the property. The expert can testify as to the basis of his or her opinion, but the expert's opinion cannot, however, be based upon a personal fear. Testimony by KPL employees, that they were aware of studies concerning the effects of electrical transmission lines and their conclusion the studies were inconclusive, was not relevant to the issue of market value. Nor was the testimony of a local realtor relevant wherein he indicated a perceived duty existed for KPL to inform the public of any damages resulting from electrical transmission lines. Counsel for the landowners questioned the KPL employees extensively on their awareness of numerous studies. While there is a connection between dissemination of information about the dangers of high voltage lines and fear in the marketplace, the emphasis on the duty of KPL to provide the information was more prejudicial than probative and should not have been admitted. But, in light of all the other relevant evidence, we find the admission of the evidence was harmless error.

## V

The final issue raised by KPL is its assertion that misconduct by landowners' counsel was so prejudicial as to require a reversal of the judgment. We disagree.

First, KPL alleges that landowners' counsel questioned witnesses in such a way as to indicate the easement was the result of a forceful and unwanted taking.

A condemnation proceeding is a sober inquiry into values, designed to strike a just balance between the economic interests of the public and those of the landowner. *Morgan v. City of Overland Park,* 207 Kan. 188, 190, 483 P.2d 1079 (1971). In striking that balance, there is no room for appeals to prejudice against the condemnor or sympathy for the landowner. Neither

the relative financial position of the parties nor the landowner's unwillingness to sell are relevant to the issues of value and damages. *Masson v. Kansas City Power & Light*, 7 Kan. App. 2d 344, 348-49, 642 P.2d 113 (1982).

Clearly, questions concerning the landowners' displeasure with the easement across their property were improperly asked. The questions have no relevance on the issue of value and damages.

The record is replete with objections and motions for mistrial by KPL based upon the prejudicial effect of the conduct of landowners' counsel. In many instances the objections were sustained; however, no motion for mistrial was granted. As a general rule, this court has adopted the view that the trial court is in a better position than an appellate court to determine whether a verdict resulted from the asserted misconduct of counsel, and its conclusion will not be disturbed unless it is plainly in error. *Richards v. Kansas Gas & Electric Co.*, 211 Kan. 199, 200, 505 P.2d 695 (1973); *Collins v. City Cabs, Inc.*, 192 Kan. 394, 399, 388 P.2d 597 (1964). Where the right to a fair and impartial jury has been prejudiced, however, a new trial will be granted. *Smith v. Blakely, Administrator*, 213 Kan. 91, 96, 515 P.2d 1062 (1973); *Taylor v. F.W. Woolworth Co.*, 151 Kan. 233, 241, 98 P.2d 114 (1940).

In the instant action, we find no line of questioning or comment by the landowners' counsel to be so egregious and prejudicial to require reversal. Comments and questions as to the landowners' displeasure with the easement upon their property could reasonably be presumed by the jury. Thus, the conduct of plaintiffs' counsel was not so prejudicial as to affect the jury's verdict.

The judgment of the district court is affirmed.