No. 65,322

James William Van Horn, Jr., and Rosalie Mae Van Horn, *Appellees*, v. The City of Kansas City, Kansas, a municipal corporation, *Appellant*.

(819 P.2d 624)

Opinion filed October 25, 1991.

*Timothy P. Orrick*, of Holbrook, Ellis & Heaven, P.A., of Kansas City, argued the cause and was on the brief for appellant.

*L. D. McDonald, Jr.*, of McDonald Law Firm, of Overland Park, argued the cause, and *Ronald D. Garrison*, of the same firm, was with him on the brief for appellees.

The opinion of the court was delivered by

ABBOTT, J.: The City of Kansas City, Kansas, (the City) appeals from a jury award ($9,000) to James and Rosalie Van Horn in an eminent domain proceeding. Our jurisdiction arises from K.S.A. 26-504, which allows direct appeals to the Supreme Court from any final order in an eminent domain proceeding.

The City's appeal in this case involves testimony concerning 99th Street becoming a 4-lane road and the effect this testimony has on the value of the remainder.

The Van Horns own and reside at 2214 North 99th Street in Kansas City, Kansas. Their lot is 100 feet wide by 263 feet deep and is located on the west side of 99th Street between Parallel Parkway and Leavenworth Road. The 100-foot width fronts 99th Street.

Prior to the taking, the right-of-way for 99th Street was 60 feet wide, extending 30 feet east and west of the centerline. In this case, the City took a permanent 10-foot right-of-way easement along the front of the Van Horns' property. The City also took an additional 15-foot temporary construction easement next to the 10-foot permanent right-of-way easement. This appeal concerns only the permanent easement.

Prior to this action, 99th Street was a 2-lane asphalt roadway without curbs. The area was not serviced by a sewer system. The only construction in front of the Van Horns' house consisted of installing a sewer line within the 10-foot permanent easement.

Most of the road work undertaken as a part of the construction project commenced immediately after the taking took place on 98th and 99th Streets. The road work occurred south of the Van Horns' property, primarily between State Avenue and Parallel Parkway. Road improvements to 99th Street were undertaken north of Parallel Parkway in the immediate vicinity of the 99th Street/Parallel Parkway intersection. The road work ceased several hundred feet to the south of the Van Horns' property, and no actual road improvements were to be undertaken immediately on 99th Street in front of and surrounding the Van Horns' property at this time.

The first through streets east of Interstate 435 are 98th and 99th Streets between State Avenue and Leavenworth Road. The

City's Master Road Plan, dating back to at least 1984, projects this portion of 98th and 99th Streets eventually to be improved to a 4-lane roadway.

The Van Horns appealed the City's award of $700. Prior to trial, the City filed a motion in limine to prevent the Van Horns' experts from including proposed road improvements in their testimony. The City argued that because no road construction definitely was planned, the Van Horns should not be compensated for any potential future change in road width. The trial court denied the motion.

At trial, the city engineer testified that he believed 99th Street eventually will be improved to some type of 4-lane roadway, but he was unable to say when. If 99th Street is widened to a 4-lane roadway, additional land would have to be condemned. A Class "C" thoroughfare requires an 80-foot right of way—an additional 10 feet could be acquired on the east side of 99th Street (the other side of the street).

During trial, the Van Horns elicited testimony from the appraisers that threat of future expansion would affect the value of the property because potential buyers would not want to live on a 4-lane street. The jury awarded the Van Horns a total of $9,000. This appeal followed.

The City bases its argument on the following language from a recent case, *Hudson v. City of Shawnee*, 246 Kan. 395, 790 P.2d 933 (1990): "The general rule is that *enhancement* or depressing of value due to anticipated improvements by the project for which condemnation is sought is excluded in determining fair market value." 246 Kan. at 406, citing 4 Nichols on Eminent Domain § 12.3151 (3d ed. rev. 1985).

This court has considered the impact of the improvement on the remainder of the landowners' interest without any discussion of the rule suggested by the City in numerous cases. For a recent example, see *Ryan v. Kansas Power & Light Co.*, 249 Kan. 1, 815 P.2d 528 (1991).

Generally, the rule discussed in *Hudson* applies if an entire piece of property is taken and then only to the value of the property before the taking. This rule prevents consideration of any increase or decrease in value resulting from the announce-

ment of a project that will affect the property actually taken. Nichols explains:

"It rarely happens that proceedings for the condemnation of and for public use are instituted without months, years, and in some instances, decades of time spent in preliminary discussion and in the making of tentative plans. These discussions and plans are usually known to owners and other persons interested in land in the vicinity of the proposed improvement, and are matters of common talk in the neighborhood. . . .

"The general rule is that any enhancement in value that is brought about in anticipation of, and by reason of, a proposed improvement, is to be excluded in determining the market value of the land." 4 Nichols on Eminent Domain § 12 B.17 [1] (3d ed. rev. 1990).

Nichols adds:

"If the exact location of the improvement is known from the outset, the property that will serve as the site of the improvement will not be subject to any rise or fall in values. This is so because the property is bound to be taken if the improvement is in fact constructed, and, therefore, it can neither suffer from, nor enjoy, the effects of the existence of the improvement in its neighborhood. Consequently, it is well settled that in such cases the effect of the proposed improvement upon the neighborhood must be ignored in valuing the land." 4 Nichols, § 12 B.17 [2].

Nichols refers only to the value of the property before the taking. In Kansas, the measure of damages for taking an entire tract is "the value of the property or interest at the time of the taking." K.S.A. 26-513(b). Suppose that an entire tract of land is to be taken for a roadway. The market price of the land is based on what a landowner can expect to derive from the land. If there is a roadway on the land, a landowner could find no productive use for the property and no one would pay anything for it. The value of this land, then, would be zero. Without the *Hudson* rule, the public agency taking the land could argue the land's value is zero because of the announcement of the taking; therefore, the public agency would not have to pay for the land.

A partial taking is different. K.S.A. 26-513(c) provides:

"If only a part of a tract of land or interest is taken, the compensation and measure of damages are the difference between the value of the entire property or interest immediately before the taking, and the value of that portion of the tract or interest remaining immediately after the taking."

In a partial taking scenario, the *Hudson* rule prevents the public agency from arguing that the announcement of the project low-

ered the value of the property before the taking. Without the *Hudson* rule, the value of the remainder after the taking would be equal to the value of the whole prior to, and in anticipation of, the taking.

The rule announced in *Hudson* and Nichols was codified in Unif. Eminent Domain Code § 1005, 13 U.L.A. 91 (1986), and, although it has not been adopted in Kansas, the code and its comments reenforce this analysis. Section 1005 provides:

> "(a) The fair market value of the property taken, or of the entire property if there is a partial taking, does not include an increase or decrease in value before the date of valuation that is caused by (1) the proposed improvement or project for which the property is taken; (2) the reasonable likelihood that the property would be acquired for that improvement or project; or (3) the condemnation action in which the property is taken."

The comment to this section explains:

> "Section 1005 requires changes in value (*i.e.*, 'blight' or 'enhancement') caused by the project or by the imminence or pendency of the condemnation action to be excluded from consideration for purposes of establishing the fair market value of the property taken. See *United States v. Miller* (1943) 317 U.S. 369, 63 S. Ct. 276, 87 L. Ed. 336. . . .
>
> "This section applies to the determination of the 'amount of compensation' for the property taken. It thus affects not only the market value of the property taken, but also the determination of the 'before' value of the entire property in partial taking cases. See Section 1002(b). *While compensation is intended to reflect the impact of the project or improvement upon market estimates of the value of the remainder in partial taking cases (see Section 1006), the base value of the original parcel with which the 'after' value of the remainder is to be compared, should be unaffected by condemnation-caused blight or enhancement.*" (Emphasis added.)

In *Ryan v. Kansas Power & Light Co.*, 249 Kan. at 7, this court held admissible testimony concerning fear of high voltage power lines in the marketplace. This court stated, in holding such testimony admissible:

> "The sole objective of a condemnation case is to compensate the landowner for actual damages suffered. Damages which are speculative, conjectural, or remote are not to be considered for compensation. However, any loss of market value proven with a reasonable degree of probability should be compensable, regardless of its source. [Citation omitted]." 249 Kan. at 9.

If decreased market value because of overhead power lines is relevant, then certainly decreased market value because of increased traffic flow is relevant.

The City also argues that the Van Horns should not be compensated for decreased market value because the road project is not definite; thus, the trial court erred in allowing testimony because it was speculative, conjectural, and remote. In *Hudson*, the City of Shawnee condemned a temporary construction easement that gave the city the right to block the access roads to a service station. The petition did not limit the length of time the access roads could be blocked, except to limit the duration of the temporary easement. This court held that the city had taken the right to block all access for the full duration of the temporary easement, despite the city's protestations that it did not intend to do so. 246 Kan. at 402.

In so holding, the *Hudson* court correctly applied a well-recognized rule of eminent domain—the landowner is compensated for what actually is taken. In *Hoy v. Kansas Turnpike Authority*, 184 Kan. 70, 76, 334 P.2d 315 (1959), the court quoted from Annot., 7 A.L.R.2d 366 with approval:

" 'A condemner cannot avail of what may aptly be termed a "conditional" condemnation, but must take whatever rights are sought to be appropriated absolutely, paying in full therefor, regardless of future intentions; the rights acquired, and not the intended use of those rights, is the measure of the landowner's compensation."

Here, the City had the option of condemning a sewer easement or a road right-of-way, and it elected the latter. The City cannot now complain that it must pay for what it took or that testimony was introduced concerning the purpose of the taking and its intended future use.

The trial court did not err in admitting evidence of decreased market value because of the City's condemnation of the right-of-way easement.

Affirmed.