UNITED STATES of America, upon the relation and for the Use of the TENNESSEE VALLEY AUTHORITY, Appellant,

v.

J. P. ROBERTSON et al., Appellees.

No. 21778.

United States Court of Appeals
Fifth Circuit.

Jan. 14, 1966.

Charles J. McCarthy, Gen. Counsel, Thomas A. Pedersen, Beauchamp E.

878

Brogan, Attys., Tenn. Valley Authority, Knoxville, Tenn., for appellant.

Wm. G. Burgin, Jr., Hunter M. Gholson, Columbus, Miss., for appellees.

Before JONES and THORNBERRY, Circuit Judges, and SLOAN, Senior District Judge.

SLOAN, Senior District Judge:

On October 19, 1960, by the filing of a Declaration of Taking accompanied by a deposit of $1900.00 as the government's estimate of just compensation, the United States through its agency the Tennessee Valley Authority (hereinafter referred to as "TVA") took an easement 150 feet wide and 2,753 feet long across a farm of 187 acres in Lowndes County, Mississippi.

The issue of just compensation was tried initially before three Commissioners appointed by the District Court pursuant to § 25 of the TVA Act (16 U.S.C.A. § 831x).

At the conclusion of the trial the Commissioners awarded $5,725.00 to which award both parties filed exceptions. By agreement of the parties the case was submitted on the record before the Commissioners and briefs to a single district judge instead of a three judge court as permitted by § 25 of the TVA Act.

Before the District Judge the government urged the Court to enter an award in the amount of $1937.50 or, in the alternative, to remand the case to the Commissioners for a rehearing with proper instructions as to the government's right to cross-examine the land-owners' witnesses concerning damages. The District Court denied this relief and upon the basis of the record increased the Commissioners award to $7,000.00.

This is an appeal by the government under § 25 of the Tennessee Valley Act (16 U.S.C.A. 831x) from the decision and award of the District Judge.

The government here contends that it was prejudicial error to deny government counsel the right to cross-examine the land-owners' expert witnesses by means of hypothetical or abstract questions for the purpose of testing their competence and the reasonableness of their appraisal. The government further insists that the Court included in its award compensation for assumed elements of damage when the government contends there was no testimony in the record as to such damages.

As to the government's first contention that their right of cross-examination was unduly restricted, it appears:

The basis of the plaintiff's contention is the cross-examination of a witness McDaniel who had testified on direct examination, as follows:

(Beginning at the bottom of Page 73 of the printed record).

Q. All right, sir. I see. What in your opinion was the fair market value of the Robertson place immediately prior to condemnation of the easement across it by TVA in October of 1960?

A. The value prior?

Q. Yes, immediately before.

A. I valued it at $155,200. I valued it $700 per acre, and $35,000 on the home.

Q. What was the value of that property in your opinion, fair market value, immediately after condemnation of the easement by TVA?

A. I figured it $148,680.

Q. What then was the damage that Mr. Robertson sustained as a result of the condemnation of the easement by TVA?

A. $16,520.

Counsel for the property owners then proceeded to go into the factors that Mr. McDaniel considered as having entered into that damage. After some further direct examination counsel for the government took the witness on cross-examination and after cross examining the witness at some length on how he arrived at that figure at the bottom of page 80 of the printed record counsel for the government asked the witness, as follows:

Q. Now, of the $16,520 damages, how much of that damage did you put within

the easement area itself, the area that the line goes across?

Mr. Burgin:

We object to that on the ground that it is not the proper test. The proper test is the before and after value of the entire farm, and that is the basis upon which he appraised it.

Chairman Sims:

Objections overruled.

Mr. Burgin:

You will note our objection in there.

Q. How much acreage in the easement area, do you know?

A. 9.48.

Q. How much of that $16,000 damages did you put in the easement area itself?

A. I didn't work my appraisal that way.

Q. Would you work it that way and tell us how much the easement area itself is damaged?

Mr. Burgin:

May it please the Court, the witness is not required to present it that way, and we submit it is not the true test. You can't value a strip of land down through the center of a farm—(interrupted).

Chairman Sims:

If he knows, if he figured it that way; if he didn't—(interrupted).

The Witness:

No, I didn't figure it that way.

Q. Can you figure it that way?

A. I can, but I would like to have some time to think about it that way.

Q. How did you arrive at your estimate of damage if you didn't put any damage in the easement area?

A. I told you I guessed about 10 percent over-all damage. I took the whole place that was in my opinion damaged.

Q. All right, suppose the farm was 500 acres. Would you still put damage at 10 percent?

Mr. Burgin:

We object to that as a hypothesis not within the testimony, Your Honor.

Chairman Sims:

Objection sustained.

Mr. Brogan:

That's all I have.

■■ Cross-examination of a witness is a matter of right though the use of cross-examination is subject to control by the Court and the Court in its sound discretion may restrict the right of cross-examination once an area has been adequately explored. Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624. And while we feel that the question here was a proper question which the witness should have been allowed to answer, we are clear that in view of the full cross-examination allowed its exclusion was not a harmful error and under the circumstances here will not require reversal. As this court said in the case of Tugwell v. A. F. Klaveness & Co., 320 F.2d 866 at page 869, in discussing the exclusion of evidence,

"Hardly anywhere does the inherent nature of an adversary trial commit so much to the careful, but wide and flexible, discretion of the Judge. See Reagan v. Sinclair Refining Co., 5 Cir., 1963, 319 F.2d 363."

The record reveals that the government's right of thorough cross-examination was substantially afforded them and it appearing that the error in excluding this question did not effect the substantial rights of the parties it will not require a reversal of this case.

It is the contention of the government that in not allowing counsel for the government to require the witnesses for the defendant to base their estimate of damages on the damages to the easement area and their estimate of damages to the remainder of the farm constituted an undue and improper restriction on their right of cross-examination.

It is clear from the cross-examination of the defense witnesses, by counsel for

the government, that they were not undertaking to test the accuracy of the opinion of the witnesses nor testing the probative weight of the experts' estimate of value but on the contrary were undertaking, under the guise of cross-examination, to compel the witnesses to adopt the method of appraisal used by the government's witnesses; that is, to arrive at the total damages by first assessing the damages to the easement tract, and then assess the damages done to the remainder of the farm without appraising the farm as a whole before the imposition of the easement and its value after the imposition of the easement.

■ This the government had no right to do and in denying the government this right, the right of cross-examination was not unduly restricted.

■ The standard and measure of value in condemnation proceedings where the estate taken is less than the fee or absolute ownership, such as a flowage easement, or servitude, and of compensation to be paid for the rights appropriated, is the difference between the fair market value of the land as a whole with and without the burden. Slattery Company, Inc. v. United States, 5 Cir., 231 F.2d 37, 38(8); Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236.

■ The government further insists that the Court included in its award of compensation incidental damages to the property outside of the easement based on "danger to persons and property, real and apprehended arising from the presence of the powerline and for erosion problems" because, the government contends, there was no evidence to support such damages. A reading of the findings of the District Judge do not sustain this contention.

The record discloses that in the Court's "Findings of Just Compensation on Hearing De Novo" the Court, after stating the issues and the facts as he found them to be, said:

"Not having had an opportunity to view personally the property of the defendants so as to personally evaluate the beautification and improvement program results thereon, but considering all the evidence in the transcript of the proceedings before the Commissioners, this Court is of the opinion and finds that the fair market value of the defendants' property before the taking of this easement was $92,500, and the fair market value after the taking of the easement was $85,500. Hence, this Court finds that the amount of seven thousand dollars ($7,000.00) is a proper sum to be paid to defendants as just compensation for the taking of this easement.

"Two other matters need to be dealt with. Plaintiff contends that the Commissioners erroneously and unduly restricted plaintiff's right of cross-examination with respect to defendants' witnesses. Considering all of the evidence in this record, it is apparent that some of the hypothetical questions which plaintiff's counsel wished to put to defendants' witnesses were not based on a proper factual predicate and that on the whole the right of full cross-examination was adequately preserved for plaintiff.

"As may be clear from what has heretofore been said, this Court considers that the damages incidental to the rest of defendants' property which lies outside the calls of the easement itself make up the greater portion of the amount fixed herein as just compensation for the taking of the easement. These incidental damages consist of the unsightliness in this locale of the towers and transmission line; danger to persons and property (real and apprehended) arising from the presence of the power line on the land; change in looks arising from the cutting of trees and clearing of the right-of-way and minor erosion problems which will arise from such clearing. All of these, this Court finds, diminish the value of the

whole estate to the amount of $5100. Diminution in the value from before to after the taking of the property within the calls of the easement was $1900."

■ It is clear from the findings that the Court did apply the proper rule and determine the just compensation to be paid to be the difference in the fair market value of the entire tract with and without the burden, and that the evidence before the Commissioners which was evaluated by the District Court fully justified the award made.

The land owners presented five witnesses who testified as to the value of the entire tract before the taking of the easement and the value thereof after the taking. The substance of their testimony was, as follows:

| Name | Before Taking Value | After Taking Value | Difference |
|---|---|---|---|
| J. P. Robertson | $150,650 | $ 75,325 | $75,325 |
| Banks McDaniel | $165,200 | $148,680 | $16,520 |
| James B. Kaye | $ 90,000 | $ 75,000 | $15,000 |
| Julian B. Gardner | $ 93,500 | $ 79,475 | $14,025 |
| Hartwell Loftis | $ 93,000 | $ 79,000 | $14,000 |

The government offered testimony of five witnesses. Their testimony with respect to just compensation for the easement ranged from $1700 to $1937.50. In each instance the testimony was based on the witnesses' opinion as to damage to the easement area and one of the witnesses, Mr. Lindley, gave his opinion as to damages to the tract outside the easement area caused by the taking. None of the witnesses for the government arrived at their opinions by determining the difference in the fair market value of the entire tract with and without the burden.

The Court had already found that the easement had reduced the market value of the property that had thus damaged the tract and he was here discussing the causes of that damage, i. e., the diminution of the market value.

■ Causes of diminution of market value, the construction of powerline carrying high voltage electricity across a tract of land which create in the general public fears which make the property less desirable and thus diminish the market value of the property are proper to be considered, though as a separate item of damage might be too speculative and conjectural to be submitted to the Court. Olson v. United States, supra; United States ex rel. and for Use of Tennessee Valley Authority v. Russell, D.C., 87 F.Supp. 386 at p. 389.

It is clear from the findings that the Court did apply the proper rule and determined the just compensation to be paid to be the difference in the fair market value of the entire tract with and without the burden.

It is equally clear that the evidence before the Commissioners which was evaluated by the District Court fully justified the award made. There being no reversible error the judgment is affirmed.