United States Court of Appeals,
Fifth Circuit.

No. 95-60387

Summary Calendar.

UNITED STATES of America, Plaintiff-Appellee,

v.

14.38 ACRES OF LAND, MORE OR LESS SITUATED IN LEFLORE COUNTY, STATE OF MISSISSIPPI, Defendant,

and

Joseph C. COKER, III, Defendant-Appellant.

April 18, 1996.

Appeal from the United States District Court for the Northern District of Mississippi.

Before WIENER, PARKER and DENNIS, Circuit Judges.

PER CURIAM:

In this eminent domain action, the district court granted the Government's motion *in limine* to exclude expert testimony regarding severance damages claimed by appellant, Joseph Coker, III, as a result of the Government's taking of an easement over a portion of his property. Having excluded the testimony, the trial court issued a final judgment awarding Coker an amount stipulated to by the parties solely as just compensation for the portion of the property subject to the easement and an uneconomic remnant. Because we find that the trial court abused its discretion in excluding the expert testimony concerning the alleged decrease in value of the remaining property as a result of the Government's taking, we vacate the district court judgment and remand for further proceedings consistent with this opinion.

*FACTS AND PROCEDURAL HISTORY*

James C. Coker, III, owns approximately 350 acres located along the Yazoo River in Leflore County, Mississippi. The property, part of a tract bought by his family in 1935, contains Coker's residence and out-buildings, and is used for the farming of cotton, soybeans and corn. In 1938, private landowners constructed a levee that protected the majority of Coker's property from rising

waters of the Yazoo River. The levee has since been maintained by area landowners and government entities, including the Leflore County Board of Supervisors and the United States Army Corps of Engineers.

In order to build a new levee in connection with the Upper Yazoo Project, the United States, on May 20, 1992, filed a complaint and declaration of taking in the Northern District of Mississippi to condemn 14.38 acres of the Coker pro perty along its western and northern boundaries. The property was taken for the public purpose of providing "flood control in Yazoo River Basin, Mississippi, and for other uses incident thereto, in connection with the construction, operation and maintenance of the Upper Yazoo Project as part of the Yazoo Basin Headwater Project, Upper River Basin, Mississippi...." Record at 2 (Complaint ¶ 3). The estate taken by the United States is a perpetual and assignable right and easement in the land to construct, maintain, repair, operate, patrol and replace a flood protection levee, public roads and highways, and public utilities, reserving to the owner such rights and privileges in the land as may be used without interfering with such or preexisting easements. *Id.* (Complaint ¶ 4). The location of the new levee places the remainder of Coker's property on the unprotected side of the levee, between the levee and the Yazoo River. According to Coker, local, state and federal governments will no longer contribute to the upkeep of the old levee, and the cost of maintenance will fall on Coker.

The United States originally deposited with the court the sum of $12,500.00 as just compensation for the easement, an amount subsequently increased by the sum of $3,150.00. Joseph Coker appeared to assert his interest in the determination of just compensation for the taking, contending primarily that the construction of the new levee has decreased the value of his remaining property because the apparent increased likelihood of flooding on the land has lowered its market value.

In his Exhibit and Witness List, Coker listed himself, Rip Walker, James Hooper, Rogers Varner and Bill Roberts as his anticipated or possible witnesses at trial. R. at 263-64. Prior to the trial of this matter, however, the Government filed a motion *in limine* to exclude expert testimony by Rogers Varner and Rip Walker, Coker's engineering and real estate appraisal experts, respectively.

Varner is a civil engineer who received a Bachelor of Science degree in Civil Engineering from the University of Mississippi and a Masters of Engineering from Tulane University and who previously worked as a civil engineer for the United States Army Corps of Engineers. He stated in his expert report that based on his review of United States Geological Survey maps, data from the Corps of Engineers regarding past flood events, and aerial photographs, Coker's property, located entirely on the unprotected side of the new levee, was more likely to be damaged in a major flood than in pre-project conditions, and that his inspection of the old levee revealed that it was in a state of failure in parts and that it could not be repaired. In the event a flood breached the failing old levee, Varner opined that the new levee system would insure that water would pond and stand on Coker's property. Walker, who is licensed as a real estate broker in Mississippi, certified as a real estate appraiser in Mississippi and Tennessee, and is a member of the Appraisal Institute, explained in his report that a potential buyer of Coker's property would immediately note its location on the unprotected side of the levee, as well as the fact of the levee's construction, and would perceive that the property was likely to flood, despite the Corps of Engineer's position that its channelization of the river would reduce the water level in the river and thus decrease the likelihood of flooding. Because of this perceived risk of flooding, Walker concluded that the property's market value had decreased as a result of the taking. Based largely on his analysis of sales of agricultural land on protected and unprotected sides of levees, as well as discussions with other appraisers, brokers and lenders, Walker concluded, in part, that the lands used for cotton farming would now be marketable as less valuable soybean-farming property, and that the risk of flooding would decrease the value of the residence by approximately $20 per square foot or require the construction of a ring levee around the house costing approximately $60,000.

The district court granted the Government's motion *in limine.* The court concluded that the expert opinions of Varner and Walker lacked sufficient foundation under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), finding that these expert opinions "are speculative and not based on reliable foundations and thus would be of no aid to the finder of fact in determining just compensation in this case." 884 F.Supp. 224, 227

(N.D.Miss.1995). In reaching this determination, the lower court appears to have focussed on the uncertainty that both experts expressed about the extent of flooding on Coker's property in the event of heavy rainfall. *Id.* Having excluded expert testimony on the value of Coker's property, the district court concluded that no competent evidence remained to be considered and therefore Coker could not meet his evidentiary burden in demonstrating a diminution in the value of his property.[1] *Id.* at 228. The court consequently entered judgment in favor of Coker for $17,134.00, an amount stipulated to by the parties as just compensation for actual damages for the land taken and an uneconomic remnant.[2]

## *DISCUSSION*

Under the Fifth Amendment's takings clause, private property may not be taken for a public purpose without "just compensation." U.S. Const. amend. V. Just compensation, as defined by the Supreme Court, "includes all elements of value that inhere in the property, but it does not exceed market value fairly determined." *Olson v. United States,* 292 U.S. 246, 255, 54 S.Ct. 704, 708, 78 L.Ed. 1236 (1934). In this case, a partial taking has occurred, as the Government has acquired an easement over a portion of Coker's property. When the Government has physically acquired through its eminent domain powers a portion of a distinct tract of property, "the compensation to be awarded includes not only the market value of that part of the tract appropriated, but the damage to the remainder resulting from that taking, embracing, of course, injury due to the use to which the part appropriated is to be devoted." *United States v. Grizzard,* 219 U.S. 180, 183, 31 S.Ct. 162, 163, 55 L.Ed. 165 (1911). The proper measure of damages in such a case is the difference between the value of the parent tract before the taking and its value after the taking. *United States v. 8.41 Acres of Land, Situated in Orange County, State of Texas,* 680 F.2d 388 (5th Cir.1982).

---

[1]Although Coker clearly proposed in his pretrial witness list to introduce other testimony, including his own, the district court does not appear to have considered this proposed testimony in concluding that Coker had not met his evidentiary burden of proving a diminution in value of the remainder of his property. Coker, however, does not raise the court's omission in this respect as error.

[2]The trial court reserved ruling on Coker's motion *in limine* to exclude anticipated testimony of the Government.

The district court acknowledged these basic legal precepts, but concluded that the expert testimony proposed to be introduced by the appellant was so lacking in reliability that it should be excluded from evidence. Although a trial court is accorded a wide berth to determine the admissibility of expert testimony, *Christophersen v. Allied-Signal Corp.,* 939 F.2d 1106, 1109 (5th Cir.1991) (*en banc* ) (*per curiam* ), *cert. denied,* 503 U.S. 912, 112 S.Ct. 1280, 117 L.Ed.2d 506 (1992), we conclude that in this case the district court abused its discretion in excluding the testimony.

Under the Federal Rules of Evidence, a qualified expert witness may testify "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue...." FED.R.EVID. 702. The trial court is charged with making initial determinations as to the admissibility of evidence. FED.R.EVID. 104(a). However, in determining the admissibility of expert testimony, the district court should approach its task "with proper deference to the jury's role as the arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Viterbo v. Dow Chemical Co.,* 826 F.2d 420, 422 (5th Cir.1987). This is especially true in an eminent domain action, in which "[e]xpert opinion testimony acquires special significance ... where the sole issue is the value of condemned property." *United States v. 68.94 Acres of Land, More or Less, Situate in Kent County, State of Delaware,* 918 F.2d 389, 393 (3rd Cir.1990). As the *68.94 Acres* court observed:

> The value of property taken by the Government, which is no longer on the market, is largely a matter of opinion. Since there are no infallible means for determining with absolute conviction what a willing buyer would have paid a willing seller for the condemnee's property at the time of taking, eminent domain proceedings commonly pit the Government's valuation experts against those of the landowner. Thus, the exclusion of one or all of either party's proposed experts can influence substantially the amount of compensation set by the factfinder. Not only does the landowner have a strong interest in receiving just compensation for property, the public as well has vested interests in insuring that the Government does not pay more than what the owner justly requires. Recognizing the critical role of expert witnesses in these cases and the strong interest on both sides that compensation be just, trial courts should proceed cautiously before removing from the jury's consideration expert assessments of value which may prove helpful.

*Id.*

In this case, the district court determined that pursuant to the Supreme Court's recent

decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the proposed expert testimony of Rogers Varner and Rip Walker was based on too flimsy a foundation to be admissible. The court found the testimony to be "speculative" because both witnesses were tentative about the possibility of flooding on Coker's property and observed that even so-called "anticipated damages" must be based on "substantial data then available." 884 F.Supp. at 227. We think that the district court applied too stringent a reliability test in this regard. In *Daubert,* the Supreme Court held that the common-law, "general acceptance" test for the admissibility of novel scientific evidence articulated in *Frye v. United States,* 54 App.D.C. 46, 293 F. 1013 (1923), did not survive the advent of the Federal Rules of Evidence, and articulated standards for determining the reliability of scientific expert testimony for purposes of admitting the evidence at trial.[3] The case did not otherwise work a seachange over federal evidence law. *See United States v. Sinclair,* 74 F.3d 753, 757 (7th Cir.1996) ("*Daubert* does not create a special analysis for answering questions about the admissibility of all expert testimony."). Rather, *Daubert* articulates what the Federal Rules of Evidence, as well as a trial court's traditional role, already required—that the trial court engage in the initial "gatekeeping" task of establishing whether proffered evidence is sufficiently reliable and relevant, and thus presumptively admissible unless excludable on some other ground. *See Daubert,* 509 U.S. at ----, 113 S.Ct. at 2799 ("the Rules of Evidence ... do assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."). As the Court in *Daubert* makes clear, however, the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at ----, 113 S.Ct. at 2798.

---

[3]*Daubert* expressly limited its discussion to the admissibility of scientific expert testimony. *See id.* at ---- n. 8, 113 S.Ct. at 2795 n. 8; *see also United States v. Sinclair,* 74 F.3d 753, 757 (7th Cir.1996) (*Daubert* provides a method for evaluating the reliability of witnesses who claim scientific expertise."); *Iacobelli Const., Inc. v. County of Monroe,* 32 F.3d 19, 25 (2nd Cir.1994) (*Daubert* sought to clarify the standard for evaluating "scientific knowledge' for purposes of admission under FED.R.EVID. 702.").

In this case, the experts' inability to predict the extent of flooding to Coker's property as a result of future heavy rains does not render their testimony entirely speculative and therefore unreliable for purposes of admissibility. Indeed, common sense suggests that the Government would not have gone to the expense of taking private property and erecting a levee for the purpose of "flood control in Yazoo River Basin" were the possibility of flooding in the area mere "speculation and conjecture." That prospective buyers of the property would have an increased fear of flooding, thereby decreasing the market value of the property, is a matter that the factfinder may properly consider in assessing the diminution, if any, of the property's value. In *United States v. Robertson,* 354 F.2d 877 (5th Cir.1966), this Court recognized the viability of claims for severance damages based on the likelihood that prospective buyers would fear hazards arising from the Government's use of condemned property. In that case, the Court observed:

> Causes of diminution of market value, the construction of powerline carrying high voltage electricity across a tract of land which create in the general public fears which make the property less desirable and thus diminish the market value of the property are proper to be considered, though as a separate item of damage might be too speculative and conjectural to be submitted to the Court.

*Id.* at 881 (citations omitted); *see also United States v. 33.5 Acres of Land, More or Less, in the County of Okanogan, State of Washington,* 789 F.2d 1396 (9th Cir.1986) (permitting severance damages based on threatened invasion of knapweed); *United States v. 760.807 Acres of Land, More or Less, Situate in the City and County of Honolulu, State of Hawaii,* 731 F.2d 1443, 1447 (9th Cir.1984) ("if fear of a hazard would affect the price a knowledgeable and prudent buyer would pay to a similarly well-informed seller, diminution in value caused by that fear may be recoverable as part of just compensation."); *United States ex rel. TVA v. Easement and Right of Way,* 405 F.2d 305, 309 (6th Cir.1968) ("In the final analysis, we are concerned only with market value. Although these studies may show objectively the complete safety of these structures, we are not convinced that certain segments of the buying public may not remain apprehensive of these high voltage lines, and therefore might be unwilling to pay as much for the [adjacent] property as they otherwise would."); *United States v. 2,877.37 Acres of Land in Harris County, Tex.,* 52 F.Supp. 696, 702 (S.D.Tex.1943) (testimony to show severance damages based on "mental hazards" arising from fear of harm from

dams or levees built by government properly admitted); *Florida Power & Light Co. v. Jennings,* 518 So.2d 895, 898 (Fla.1987) ("[w]e join the majority of jurisdictions who have considered this issue and hold that the impact of public fear on the market value of property is admissible without independent proof of the reasonableness of the fear."); *Ryan v. Kansas Power & Light Co.,* 249 Kan. 1, 815 P.2d 528, 533 (1991) (evidence of fear in marketplace admissible regarding value of property without proof of reasonableness of fear); *City of Santa Fe v. Komis,* 114 N.M. 659, 845 P.2d 753, 756 (1992) (same); *Criscuola v. Power Authority of the State of New York,* 81 N.Y.2d 649, 602 N.Y.S.2d 588, 589, 621 N.E.2d 1195, 1196 (N.Y.1993) (same); *Heddin v. Delhi Gas Pipeline Co.,* 522 S.W.2d 886, 888 (Tex.1975) (fear in minds of buying public that is based in reason or experience is relevant to proof of damages for depreciation of market value caused by fear).

Varner's opinion that flooding of the property is now more likely is based on his review of maps, photographs and data, and his inspection of the property, as well as his experience as a civil engineer.[4] Walker's valuation of the property, predicated on the threat of flooding suggested by Varner's opinion and the fact of the levee's existence itself, is based on his inspection of the property; discussions with other appraisers, brokers and lenders; comparable sales; and his experience as a real estate appraiser. The Government contends these bases are insufficient. It argues that Varner's explanations of the effects of the new levee are "vague" and based on mere "possibility;" that Walker's conclusion that the property can no longer be sold for cotton farming is belied by Coker's continued production of cotton; that the fact that the property may exist in a floodplain has not been altered by construction of the new levee; and that Walker's comparable sales, because based on the assumption of flooding, are not truly comparable. The perceived flaws in the testimony of Coker's experts are matters properly to be tested in the crucible of adversarial proceedings; they are not the basis for truncating that process.

*DECREE*

---

[4]Varner presently is employed as a commodities broker and the Government suggests that his qualifications as an expert are "seriously questioned." The trial court did not determine that Varner is unqualified, and as he is a registered professional engineer, with both a bachelors and masters degree in engineering, it would seem that while Varner's present career may be fodder for cross examination, it hardly constitutes grounds for finding him unqualified to testify.

For the foregoing reasons, the judgment of the district court is vacated and the matter is remanded for further proceedings not inconsistent with this opinion.