UNITED STATES of America,

v.

Anthony DeWayne ALLEN

No. 1:01–CR–80.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

June 19, 2002.

Frank J Gray, Matthew J Elliott, Beckman Lawson Sandler Snyder and Federoff, Fort Wayne, IN, Quinton L Ellis, Fort Wayne, IN, Linda M Wagoner, Indianapolis, IN, for Anthony DeWayne Allen, defendant.

David H Miller, United States Attorneys Office, Fort Wayne, IN, for U.S.

### MEMORANDUM OF DECISION AND ORDER

WILLIAM C. LEE, Chief Judge.

This matter is before the court subsequent to a supplemental *Daubert* hearing held on June 13, 2002 relating to Defendant, Anthony Allen's ("Allen's") "Motion in Limine" filed on March 28, 2002. That motion sought to exclude the expert testimony of the Government's proposed witness, Thomas Pitzen ("Pitzen"), under the principles set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). The Government proposed to have Pitzen testify in its case in chief and offer expert opinion testimony

that a footwear impression taken from the scene of the bank burglary, the crime with which Defendant is charged in this case, "could be" the same shoe as the shoe worn by the Defendant at the time of his arrest.

The Court held an initial *Daubert* hearing on April 24, 2002 wherein the Government presented evidence relating to the general admissibility of footwear impression evidence. On June 10, 2002, this court entered an order affirming the general principle that footwear impression evidence is reliable technical or other specialized knowledge under *Daubert* and *Kumho Tire* and is generally admissible expert testimony in a criminal case. *See United States v. Allen,* 207 F.Supp.2d 856 (N.D.Ind.2002). In that order, the court held under advisement, the determination of whether the government's proposed expert witness was qualified to render an expert opinion in this case. It is to this question that the court now turns in light of the evidence presented at the supplemental *Daubert* hearing.

Given the court's prior ruling on the general admissibility and reliability of footwear impression evidence under *Daubert,* the task in this supplemental order is to ascertain two (1) whether the expert is qualified in the relevant field and to examine the methodology the expert used in reaching his conclusions, *Kumho Tire,* 526 U.S. at 153, 119 S.Ct. at 1176–1177, and (2) whether the methodology employed by the expert is consistent with what this court has deemed admissible evidence under *Daubert.* The court turns now to each of these questions.

At the hearing, Pitzen testified that he has eleven (11) years experience in the general field of impression evidence which includes fingerprints, palm prints, footwear, tire track and other physical comparisons. He has undergone over 200 hours of training specific to footwear, tire track, and physical match comparisons. Such training was under the supervision of John Vanderkolk, an expert who testified at the first *Daubert* hearing. In addition, he has consistently attended training seminars and other educational conferences sponsored by different organizations specific to the field of impression evidence.[1] Pitzen is an active member in the International Association for Identification as well as Indiana's Division of that same organization. Pitzen is the editor of the "Lab & Scene," a quarterly publication for the Indiana Division of the International Association for Identification.

Pitzen testified that he was taught and employs the standard ACE–V[2] methodology for impression evidence. He has employed this methodology in approximately one dozen cases.

In the present case, Pitzen indicated that he performed two separate comparisons of the unknown impression, that is, the impression taken from the floor outside the vault of the Standard Federal Bank to the known impression, that is, the Defendant's shoe.[3] The first comparison, completed in January (hereafter, "the January Comparison"), was performed through the use of computerized digital imagery. Pitzen compared a digital photo-

---

**1.** Pitzen has, for instance, attended many educational conferences sponsored by the International Association for Identification and the Indiana Division of the International Association for Identification.

**2.** As explained in this court's first order, ACE–V is an acronym standing for Analysis, Comparison, Evaluation and Verification.

**3.** Pitzen did not, as the court initially believed, take the sample of the unknown impression from the crime scene. Apparently, this was done by a crime scene investigator. Whether that investigator will be called to testify at trial as to how he lifted the unknown impression is not clear in the record.

graph of the unknown image to a scanned image of the bottom of the known shoe and then, using a graphics art program, performed a superimposition comparison.[4] Pitzen has received no formal training in the use of digital imaging for making footwear impressions nor is the software he utilized software exclusively designed for forensic use such as that employed here by Pitzen. Nevertheless, based upon this comparison, Pitzen could not positively identify the two impressions as matching shoes. Rather, his conclusion was that the two impressions "could be" a match. Because the two impressions were not a positive match, Pitzen did not seek independent verification of his conclusions as the ACE–V process requires.

In April 2002, Pitzen performed a second examination wherein he utilized the more traditional procedure for making a shoeprint comparison (hereafter, "the April Comparison") described in this court's initial order. During this examination, Pitzen made an impression of the known shoe by using fingerprint powder and stepping onto a clear overlay. Pitzen then compared the known shoe impression to the unknown impression using both the side by side comparison method and the superimposition method. Again, however, the results did not yield a positive match, only that the two impressions "could be" matching impressions and for this reason, again, there was no independent verification of Pitzen's results. In response to an inquiry by the court, the Government represented that it proposed to offer as evidence at trial only the results of the April Comparison.

■ As indicated above, the court's inquiry at this stage is a limited one. Based upon Pitzen's testimony, it appears that he is qualified by both training and experience in the relevant field of footwear impression evidence. The Government made no record as to Pitzen's proficiency or rate of error in taking impression evidence. Nor did it offer any evidence as to whether Pitzen is regularly proficiency tested in his field.[5] Yet, the court does not believe that these omissions in the record serve to disqualify Pitzen from offering his testimony. As the court noted in the first order, "the trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system." Fed.R.Evid. 702 advisory committee's note, citing *United States v. 14.38 Acres of Land More or Less Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir.1996). Thus, defense counsel is free to inquire as to Pitzen's proficiency in the field as well as to challenge his other qualifications if counsel so wishes.

■ Likewise, the court concludes that Pitzen's conclusions, as drawn from the April Comparison, are the product of the reliable principles and methods the court examined in its initial order. Although the court has some doubt as to whether Pitzen's use of the digital imaging process in the January Comparison is a recognized and reliable manner of conducting an impression comparison (indeed, no evidence was presented to the court on this point), the Government assured the court that evidence of the January Comparison would not be offered at trial. Moreover, any deficiency in the methodology employed in the January Comparison has been remedied by the April Comparison which conformed to the general methodology for

---

**4.** The mechanics of taking a superimposition impression were discussed in this court's June 10, 2002 Memorandum of Decision and Order.

**5.** The Court did make mention in its June 10, 2002 Order that it would be helpful for the court to know whether Pitzen has been proficiency tested and any results from such testing.

obtaining footwear impression evidence. Accordingly, the court finds that Pitzen employed a reliable methodology in reaching his conclusions.[6]

In sum, the court concludes that Pitzen will be permitted to provide his expert opinion as to whether the two shoe impressions are a "match." Certainly, defense counsel is free to challenge Pitzen's conclusions based upon the use of this methodology. Indeed, as the court reminded counsel in its initial order, "*Daubert* instructs that 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence ...'" *Allen*, 207 F.Supp.2d at ——, 2002 WL 1299779 (quoting *Daubert*, 509 U.S. at 596, 113 S.Ct. at 2798). Defense counsel will certainly have the opportunity to cross-examine Pitzen and inquire into the soundness of the factual underpinnings upon which Pitzen bases his conclusions as well as the correctness of his conclusions based on that analysis. With this in mind, the court shall DENY Defendant's Motion in Limine.

### *CONCLUSION*

Defendant's Motion in Limine relating to the expert testimony of Thomas Pitzen is DENIED.

SO ORDERED.

---

**6.** The Court has previously found Pitzen's testimony relevant in that it seeks to aid the jury in determining a fact in issue. *Allen*, 207 F.Supp.2d at ——, 2002 WL 1299779, *10 ("Here, whether the shoe impression taken from the bank is similar to the shoe the Defendant was wearing at the time of his arrest is certainly relevant to the jury's determination of the disputed issue of whether the Defendant was, in fact, in the bank as alleged by the Government. Further, having an expert explain how he reached his conclusions and subjecting those conclusions to vigorous cross-examination is helpful to the jury in that it aids the jury in determining the reliability of the expert's testimony.").