**WEST TENNESSEE CHAPTER OF ASSOCIATED BUILDERS AND CONTRACTORS, INC., and Zellner Construction Company, Inc., Plaintiffs,**

v.

**CITY OF MEMPHIS, Defendant.**

**No. 99–2001.**

United States District Court, W.D. Tennessee, Western Division.

Jan. 27, 2004.

Steven W. Dills, Stephen L. Shields, Jackson, Shields & Yeiser, Cordova, TN, Ralph D. Golden, Golden Law Firm, Memphis, TN, Linda Jew Mathis, Golden & Mathis, Memphis, TN, Robert J. Proctor,

Bradley A. Hutchins, Proctor, Felton & Chambers, Alanta, GA, for Plaintiffs.

Monika Lorice Johnson, Charmiane G. Claxton, Felicia Izzard Corbin, City Attorney's Office, Memphis, TN, Robert L.J. Spence, Jr., Esq., Spence Law Firm, PLLC, Memphis, TN, for defendant/third-party plaintiff.

Marcus M. Bozeman, Baker, Donelson, Bearman, Caldwell & Berkowitz, Memphis, TN, Saul C. Belz, Glankler Brown, Memphis, TN, for third-party defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR DISQUALIFICATION AND MOTION IN LIMINE

DONALD, District Judge.

Plaintiffs brought this action pursuant to 42 U.S.C. §§ 1981 and 1983 challenging the enactment of a Minority/Women Business Enterprise ("MWBE") program by the City of Memphis ("City" or "Defendant"). The MWBE program requires the City to award a certain percentage of construction contracts to businesses owned by African–Americans and women. Presently before the Court are Defendant's motion for disqualification of Plaintiffs' expert Dr. George LaNoue ("LaNoue") and motion in limine to limit LaNoue's testimony. For the following reasons, the motions are denied.

### I. Background

The City of Memphis ("City") and other public entities commissioned a study to examine whether racial disparities existed in the procurement of contracts, including those for City construction projects. The disparity study, conducted by D.J. Miller & Associates, Inc., was presented to the City Council in 1994. Based on the resulting statistics, the City Council passed Ordinance No. 4388 in 1996, to address alleged passive and active discrimination in its procurement of construction contracts. The plan requires a percentage of the amount spent on City contracts to be set aside for MWBEs.[1] If non-MWBEs bidding for City contracts do not meet those participation goals, their bid may be declared non-responsive. Under some circumstances, however, a non-MWBE may obtain a waiver from the program's requirements.

Plaintiff West Tennessee Chapter of Associated Builders and Contractors is an organization whose members are businesses engaged in construction in the Memphis area. Its organizational purpose is to protect the practice of awarding contracts based on bid price and oppose measures such as Memphis' MWBE program. Plaintiff Zellner is a non-MWBE contractor who was rejected from a City contract for failing to meet the minority participation goal.

Plaintiffs filed suit on January 4, 1999, challenging the MWBE program's constitutionality, arguing that under the Equal Protection Clause, the City must have a compelling interest to legislate on the basis of racial classifications. According to Plaintiffs, the City's disparity study does not meet the evidentiary standards required to show a compelling interest. In 2001, Ordinance No. 4388's sunset provision took effect, and the City extended the MWBE program for another five years, to conclude officially in 2006.

Plaintiffs proffer LaNoue as their chief expert, with the role of critiquing the City's disparity study. The City contends that his proposed testimony goes beyond the bounds of his expertise and is unfairly prejudicial. Accordingly, Defendant filed these motions to disqualify LaNoue, or

---

1. For the purposes of the MWBE plan, an MWBE is an independent concern which is at least 51% owned, operated and controlled by an African–American or a woman.

limit his testimony, on November 3, 2003, and Plaintiffs replied on January 5, 2004.

## II. Legal Standard

Federal Rule of Evidence 702 states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702 (2003); *see also Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

This standard essentially involves three elements. First, the expert must demonstrate to the trial court that he or she is qualified—"by knowledge, skill, experience, training or education"—to proffer an opinion. Second, by referring to "scientific, technical, or other specialized knowledge," Rule 702 requires "evidentiary reliability" in the principles and methods underlying the expert's testimony. Third, the expert's testimony must assist the trier of fact in that the testimony must "fit" the facts of the case. *See Pride v. BIC Corp.*, 218 F.3d 566, 577–78 (6th Cir. 2000); *see also Daubert*, 509 U.S. at 592–93, 113 S.Ct. 2786 ("[T]he trial judge must determine at the outset ... whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.").

"The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted. The expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded." Adv. Comm. Note to Rule 702.

■ As stated by the Third Circuit, proponents "do not have to demonstrate ... that the assessments of their experts are correct, they only have to demonstrate ... that their opinions are reliable ... The evidentiary requirement of reliability is lower than the merits standard of correctness." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir.1994); *see also Ruiz–Troche v. Pepsi Cola*, 161 F.3d 77, 85 (1st Cir.1998) ("*Daubert* neither requires nor empowers trial courts to determine which of several competing scientific theories has the best provenance."). Several factors that the trial court may consider in analyzing the reliability of an expert's methods are: whether a method is testable, whether it has been subjected to peer review, the rate of error associated with the methodology, and whether the method is generally accepted in the scientific community. *See Pride*, 218 F.3d at 577.

■ In addition, the rejection of expert testimony is the exception rather than the rule, and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." Adv. Comm. Note to Rule 702 (quoting *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir.1996)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596, 113 S.Ct. 2786.

■ The proponent of the evidence has the burden of establishing that the perti-

nent admissibility requirements are met by a preponderance of the evidence. *See* Fed.R.Evid. 104(a) (2003); *Bourjaily v. United States*, 483 U.S. 171, 175–76, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987).

### III.  Analysis

Plaintiffs have presented LaNoue to critique the disparity study, and he will offer opinions "as a political scientist with an expertise in public administration as applied to public contracting and MWBE programs as an expert in public policy analysis with an expertise in the development and evaluation of disparity studies." (Pls.' Resp. in Opp. to Def.'s Mot. to Disqualify Pls.' Expert Witness, Mot. in Limine and for Summ. J. [hereinafter Pls.' Resp.] at 7.) His main task is to construe the disparity study's measure of MWBE availability. (*See* LaNoue Aff. at 21.) LaNoue argues that the disparity study data on prime contractors was incomplete, subcontractor data was nearly missing altogether, and the anecdotal evidence was not scientifically collected or presented. He proposes that the list of previous bidders should be used to show available MWBEs, while the City argues for the study's more inclusive list of the bidders existent in Shelby County.  Therefore, LaNoue is taking the City's own study and exposing what he views as flaws in the data and analysis, arguing that his measure of availability would be more appropriate. LaNoue has not conducted a study of his own, nor has he done any complex statistical analyses. (Def.'s Mem. in Supp. of its Mot. to Disqualify Pls.' Expert Witness, Mot. in Limine and for Summ. J. [hereinafter Def.'s Mem.] at 10.)

The Court looks to the aforementioned three-pronged standard to determine if Plaintiffs have carried their burden in presenting LaNoue as an expert.  First, the Court analyzes whether LaNoue is qualified, by knowledge, skill, experience, training or education, to proffer an opinion. Defendant does not dispute that LaNoue is a political science professor with a long history of critiquing disparity studies similar to the study in the instant case. (*Id.* at 6–7.)  Defendant alleges that despite his background, "LaNoue lacks the necessary credentials and expertise to render opinions in the areas of statistics, econometrics and law.  Further, he lacks expertise in critical components of hypothesis testing and scientific reasoning." (*Id.* at 9.) The City argues that before *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989), LaNoue had no training or expertise in the area of disparity studies, and his training in the course of litigation does not qualify him to give an opinion on disparity studies. (Def.'s Mem. at 6.)

Plaintiffs have shown through LaNoue's affidavit and their response that LaNoue has researched disparity studies extensively, published in various journals, and taught a number of university courses. Plaintiffs have also shown that LaNoue has undergone substantial training, culminating in a doctorate degree and postdoctoral fellowships.  Even if the Court were to assume that LaNoue has been engaged in this line of study only since *Croson*, fifteen years seems ample time to accumulate the requisite knowledge and experience.[2]  LaNoue must only have a

---

2. Defendant argues that training in preparation for litigation should be discounted by the Court.  Defendant, and the commentator that it cites, misconstrues *Daubert*, since the leading opinion conveys nothing on the subject. *See generally Daubert*, 509 U.S. at 579, 113 S.Ct. 2786.  The overturned *Ninth Circuit*

opinion discussed testimony garnered specifically for litigation:

> Scientific studies conducted in anticipation of litigation must be scrutinized much more carefully than studies conducted in the normal course of scientific inquiry.  This add-

sufficient background to proffer an opinion, and the Court finds that he has such a background.

The Court underlines that its role is to serve as gatekeeper, not weigher, of the evidence. In the rare case where a court excludes the testimony of an expert, it is rarely on qualification grounds. For instance, the Eighth Circuit held that a hydrologist was qualified, though his expertise in flood risk management was not reliable as expertise in safe warehousing practices. *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals Inc.*, 254 F.3d 706, 715 (8th Cir.2001). The Court stated of the hydrologist, "we agree with the district court that Dr. Curtis, a hydrologist specializing in flood risk management, easily qualifies as an expert under Federal Rule of Evidence 702. The real question is, what is he an expert about?" *Id.* In the same vein, the Court finds that LaNoue is an expert. As a part of the reliability prong, the question is where does LaNoue's expertise lie?

Second, Rule 702 requires "evidentiary reliability" in LaNoue's methods and principles. The City argues that his methods for testing availability of MWBE contractors are too controversial to meet the Rule 702 standard of evidentiary reliability.[3] Under the legal standard, the Court should consider whether a method is testable, whether it has been subjected to peer review, the rate of error associated with the methodology, and whether the method is generally accepted in the scientific community. *See Pride*, 218 F.3d at 577. LaNoue's method is testable. He has used simple methods to create his report. "He did not personally conduct any statistical analysis in this case beyond simply counting numbers and calculating percentages." (Def.'s Mem. at 10 (citing Report at 24).) Also, Plaintiffs assert that LaNoue's method has been subject to peer review. Social science and law do not subject studies to the same rigorous peer review of physics, chemistry, and the hard sciences. Still, LaNoue's method has been published in many respected journals and is clearly one method accepted in the academic community. LaNoue's work has been embraced by the conservative community, as evidenced by his publication in the conservative *Harvard Journal on Law and Public Policy* and similar journals, but the Court is not requested to look to the sector of the community that includes LaNoue. The Court looks only to his inclusion within the earnest academic discussion of disparity studies.

Therefore, Defendant is right when it argues that LaNoue's method is contested,

---

ed dose of skepticism is warranted, in part, because studies generated especially for use in litigation are less likely to have been exposed to the normal peer review process, which is one of the hallmarks of reliable scientific investigation.
*Daubert v. Merrell Dow Pharm., Inc.*, 951 F.2d 1128, 1131 n. 3 (9th Cir.1991) (citations omitted), *vacated*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). If the Court were to follow the Ninth Circuit's reasoning, LaNoue's testimony would still withstand the skeptical inquiry, as his theory is well-published and reviewed.

3. Defendant also argues that LaNoue's proposed testimony goes beyond LaNoue's expertise and qualifications, which is a concern that goes to reliability. *See Wheeling Pittsburgh Steel*, 254 F.3d at 715 ("[A] district court must continue to perform its gatekeeping role by ensuring that the actual testimony does not exceed the scope of the expert's expertise, which if not done can render expert testimony unreliable under Rule 702.") (citing *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 156, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)). The Court finds that all of LaNoue's course of study, publications, and classes related to disparity studies. Testifying about the City's disparity study is within his expertise.

but the City overlooks that *all* methods for determining contractor availability are heavily contested. Availability has been at the center of much of the MWBE litigation. *Croson* gave cities interested in remedial measures very little guidance in the manner of determining availability, though the opinion did leave considered room for remedial programs. *See Croson,* 488 U.S. at 498–500, 109 S.Ct. 706. Trial courts have analyzed all the methods for measuring contractor availability and wrote intricate and developed opinions on the subject. *See, e.g., Associated Gen. Contractors of Am. v. City of Columbus,* 936 F.Supp. 1363 (S.D.Ohio 1996), *vacated,* 172 F.3d 411 (6th Cir.1999). A court may not exclude an expert just because his opinion is contested in such a murky field. The legal standard for reliability is aimed at excluding outlying evidence from experts without expertise near the arena of focus—*not* eliminating one of many viable opinions on a topic. According to the legal standard, LaNoue's testimony is sufficiently reliable and within the scope of his expertise for admission.

Defendant makes two other arguments connected to the topic of reliability. First, Defendant argues that LaNoue is not qualified to create a disparity study, since he has no experience creating disparity studies. Second, the City argues that LaNoue's sole aim has been to dismantle MWBE programs from the beginning of his career. The Court's role, at this stage, as outlined by *Daubert* and developed throughout the Federal Rules of Evidence, is to be the gatekeeper of evidence, not the weigher of evidence. *McLean v. 988011 Ontario, Ltd.,* 224 F.3d 797, 801 (6th Cir. 2000). These two arguments go to the weight that should be given to LaNoue's testimony, rather than the admissibility of the testimony.

Third, the expert's testimony must assist the trier of fact in that the testimony must "fit" the facts of the case. The court is to examine "not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Berry v. City of Detroit,* 25 F.3d 1342, 1351 (6th Cir.1994). The trial court must determine whether the expert's training and qualifications relate to the subject matter of his proposed testimony, and whether the testimony will be helpful to the trier of fact. As previously discussed, Plaintiffs have shown that LaNoue's training and qualifications relate to his proposed testimony. His criticism of the disparity study could be valuable as the Court decides whether the disparity study disclosed a compelling purpose for the MWBE program. His testimony will go to Plaintiff's main rebuttal argument of the disparity study, and it is therefore useful. Where his testimony would not "fit" the task of the jury, the Court will consider limiting testimony.

Defendant asks for LaNoue's testimony to be limited, if it is not excluded altogether. The City is particularly concerned about the testimony of LaNoue regarding law, statistics, and econometrics and asks that he not be allowed to discuss his findings on those subjects. The City has not alleged particular facts or conclusions that are improper, so the Court must investigate LaNoue's proposed testimony in broad terms of whether it will embrace the ultimate issue.

> [A]n expert's opinion may embrace an ultimate issue to be decided by the trier of fact, the issue embraced must be a factual one.... When the [Federal] rules [of Evidence] speak of an expert's testimony embracing the ultimate issue, the reference must be to stating opinions that suggest the answer to the ultimate issue or that give the jury all the information from which it can draw inferences as to the ultimate issue. We

would not allow a fingerprint expert in a criminal case to opine that a defendant was guilty (a legal conclusion), even though we would allow him to opine that the defendant's fingerprint was the only one on the murder weapon (a fact). The distinction, although subtle, is nonetheless important.

*Berry,* 25 F.3d at 1353 (citation omitted). The Court will accept the testimony of LaNoue on the grounds that Plaintiffs have proffered it—as a political scientist. His expertise and knowledge in the realm of public policy analysis will be helpful to the fact finder. Plaintiffs admit that LaNoue is not a lawyer, statistician, or economist. (Pls.' Resp. at 7–8.) According to the prevailing legal standard, LaNoue's comments should be limited to the disparity study as it relates to his expertise. As with any expert, LaNoue will not be allowed to testify as to legal conclusions. He may criticize the study, but he may not testify as to the ultimate legality of the MWBE program. As in *Berry* quoted above, the legality of the program is the ultimate topic at issue, and LaNoue is only to bring facts to light so that the jury make decide the ultimate issue of legality.

With that typical caveat, the Court will accept LaNoue's testimony for the purposes for which Plaintiffs offer it. Plaintiffs have shown that LaNoue has the qualifications to submit reliable information on the narrow issue of the disparity study. Accordingly, Defendant's motions to disqualify and in limine are denied.

## IV. Conclusion

Plaintiffs have shown that Dr. George LaNoue qualifies as an expert witness to testify on the City's MWBE disparity study as a political scientist. Accordingly, Defendant's motions to disqualify LaNoue

as an expert and limit his testimony are **DENIED.**